■ In the Matter of TRAVIS XX. and Others, Children Alleged to be Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SER-

VICES, Respondent; JANICE YY., Appellant. [638 NYS2d 181] —Mikoll, J. P. Appeal from an order of the Family Court of Otsego County (Nydam, J.), entered November 3, 1994, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be neglected.

Respondent, a single working mother, had three children ranging in age from three to six years old. On Thursday, November 11, 1993, she left the children in the care of a 17-year-old girl, who was the children's regular babysitter, and the babysitter's parents at the parents' home. The children were left with this family (hereinafter the babysitters) so that respondent could go work at an out-of-town arts and craft show that was taking place over the weekend. Respondent left adequate clothing for the children and informed the babysitters that since she was not exactly sure where the show was and where she would be staying, she would call with more information when she got there. Respondent also stated that the children's father was supposed to pick up the children for visitation on either Friday, November 12, 1993 or Saturday, November 13, 1993, but not to be concerned if he did not show up since he was a long-distance truck driver and was often "unreliable" about visitation. Thus, the babysitters understood that they could be watching the children all weekend.

Unfortunately, on Friday, November 12, 1993, a vase accidentally fell on the head of respondent's youngest son and the babysitters took him to the hospital for stitches. Notably, as they were leaving for the hospital, the children's father called the house and refused to call the hospital and give consent for his son's treatment. Since respondent had not left emergency medical authorization, the hospital informed Child Protective Services before medical attention was administered. Unable to locate respondent, the caseworkers determined to place the children in foster care. The State Police located respondent the next morning and she was told that the children were safe in foster care and, since the investigator in charge of the matter was on his "pass weekend", she should call about her children on Monday morning.

Respondent returned to her home Sunday night and went to the State Police barracks early on Monday, November 15, 1993. After being interviewed, respondent called petitioner's offices at 12:30 P.M. but was told that the appropriate caseworker was unavailable. Respondent then went on a scheduled job interview, purchased some food and some gas for her car and then returned home to call petitioner again at 5:00 P.M.; however,

petitioner had filed a neglect petition against respondent by that time. Following a fact-finding hearing, respondent was found guilty of neglect. In its bench decision (see, Family Ct Act § 1051 [a]), Family Court stated that respondent was neglectful for failing to call the babysitters Friday night, not contacting petitioner promptly, failing to leave a medical authorization, failing to inform the babysitter of her exact whereabouts and failing to return promptly after learning that her children were taken into foster care. After a dispositional hearing, Family Court suspended judgment for a year and imposed certain terms and conditions. This appeal by respondent ensued.

There must be a reversal. Family Court Act § 1012 (f) (i) defines a " 'Neglected child' " as one "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of [the] parent * * * to exercise a minimum degree of care" by supplying food, shelter, medical care or proper supervision (see, Matter of Jennifer N., 173 AD2d 971, 972). It is clear from this record that at no point did respondent place her children in imminent danger or deprive them of any minimum degree of care so as to require the commencement of neglect proceedings against her. The record persuasively demonstrates that respondent was informed by the State Police that her children were safe in petitioner's care and she could not retrieve them until Monday. Respondent appropriately went to the State Police barracks on Monday and attempted to contact petitioner. The fact that she went on a job interview thereafter does not establish that she put her children, who she knew to be safe, in any imminent danger, especially since the evidence in the record indicates that she was not told that petitioner would commence neglect proceedings against her if it was not contacted by a certain time.

While respondent's lack of foresight in giving a medical authorization was unfortunate under the circumstances, it must be remembered that she left her children with responsible caretakers who appropriately sought medical attention for the injured child. We cannot conclude that respondent was neglectful as a matter of law simply because she did not know that a hospital would not treat her children without a medical authorization. Conspicuously absent in this case is any proof that respondent's conduct in this matter resulted in any adverse effects on her children (see, Matter of William EE., 157 AD2d 974, 976). Petitioner has failed to meet its burden of establishing neglect on this record and the petition must be dismissed.

Crew III, White, Casey and Peters, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed.