THIRD DEPARTMENT, JUNE, 2000

(June 1, 2000)

■ In the Matter of RONNIE XX. et al., Alleged to be Neglected Children. CHEMUNG COUNTY DEPARTMENT OF FAMILY SERVICES, Respondent; CHARLENE XX., Appellant. [708 NYS2d 521] —Lahtinen, J. Appeal from an order of the Family Court of Chemung County (Castellino, J.), entered December 7, 1998, which, *inter alia*, partially granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, and adjudicated one of respondent's three children to be neglected.

On April 12, 1998, respondent's then 14-year-old daughter, Charlotte XX., allegedly attempted suicide. Respondent was not at home at the time of Charlotte's alleged suicide attempt but upon her return home that evening she was informed of

the incident by her son. After attempting to discuss this matter with Charlotte, respondent telephoned the crisis intervention team who came to respondent's home and transported Charlotte to a nearby hospital in the City of Elmira, Chemung County. Respondent testified that a member of the crisis intervention team suggested that she not accompany Charlotte to the hospital.

Shortly after her admission to the hospital it was determined that Charlotte was in need of an immediate psychological evaluation at an appropriate facility. Respondent was called at home and informed that Charlotte needed to be evaluated at a facility in Steuben County, an hour from respondent's home, or at a facility in Erie County, three hours away. Respondent refused to authorize the evaluation at the recommended facilities, claiming that her own medical conditions prevented her from traveling to either location and that such an evaluation was unnecessary since Charlotte had been admitted to the facility in Steuben County on February 20, 1998 for evaluation and discharged the next day because it was determined that she did not need inpatient treatment.

As a result of respondent's apparent unwillingness to authorize the recommended evaluation, a report was filed with the State Central Registry charging respondent with emotional neglect and failing to provide Charlotte with appropriate medical care. A caseworker in petitioner's Child Protective Services Unit received the "hot-line" report and initiated an investigation. The caseworker talked with respondent on April 12, 1998 in an attempt to obtain her authorization for the recommended evaluation. Respondent refused to authorize the evaluation but did sign a consent for temporary placement of Charlotte with petitioner. Charlotte was transported the next day to the facility in Steuben County for the recommended evaluation.

On April 14, 1998, a caseworker informed respondent that Charlotte was to be discharged from the facility because it was determined she did not need to be an inpatient. Respondent expressed no surprise at the news of Charlotte's pending discharge and advised the caseworker that she could not and would not travel to Steuben County to pick up Charlotte. Petitioner then decided to place Charlotte in foster care and file a neglect petition.

On April 24, 1998, respondent filed a petition for custody of Charlotte alleging that she was told to sign over temporary custody of Charlotte so she could receive help in a Steuben County facility. On May 5, 1998, Family Court (O'Shea, J.), found no imminent risk to Charlotte and returned her to

respondent's custody on certain conditions to be supervised by petitioner. On the same day, petitioner filed an amended neglect petition, with affidavits from the two caseworkers and a letter signed by two members of the staff at the Steuben County facility, charging respondent and her live-in companion[1] with neglect of her three children.

Following a fact-finding hearing on August 18, 1998, Family Court (Castellino, J.), dismissed the petition with regard to the allegations of derivative neglect (see, Family Ct Act § 1046 [a] [i]) of respondent's other two children but found Charlotte to be a neglected child. Family Court concluded in a written decision dated September 24, 1998 that petitioner proved by a preponderance of the evidence that: "when Charlotte made an apparent suicide attempt, and the treating hospital recommended to the respondent that Charlotte receive further psychiatric evaluation, the respondent's refusal to authorize such treatment, without first having made an affirmative effort to speak with Charlotte's doctor or investigate Charlotte's medical status, constituted an unreasonable risk to Charlotte's health and placed Charlotte's mental or emotional condition in danger of impairment."

Following a dispositional hearing, Charlotte was continued in the custody of respondent under petitioner's supervision for a period of 12 months on certain terms and conditions. Respondent now appeals.[2]

Family Court Act § 1012 defines a "neglected child", in relevant part, as follows:

"(f) 'Neglected child' means a child less than eighteen years of age

"(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care".

The statute requires a showing, by a preponderance of the evidence, of parental misconduct and harm or potential harm to the child as a result of that misconduct (see, Matter of Jessica YY. [Pamela YY.], 258 AD2d 743, 744; Matter of Jennifer N. [Janine O.], 173 AD2d 971, 972; Matter of William EE. [Don-

---

1. The portion of the amended petition charging respondent's companion with neglect was deemed dismissed by a Family Court order dated July 15, 1998.

2. Although the order appealed from has expired, an adjudication of neglect may affect a parent's status in future proceedings and an appeal from such a finding is not moot (see, Matter of Jeffrey D. [Darrie D.], 233 AD2d 668, 669).

*ald EE.]*, 157 AD2d 974, 976). Since we conclude that petitioner has failed to sustain its burden of proof with regard to either of the required showings, we reverse.

In the first instance, petitioner alleged and Family Court found that respondent's failure to authorize the recommended evaluation for Charlotte constituted parental misconduct. The record indicates that respondent was contacted by the hospital around noon on April 12, 1998 and asked to authorize an evaluation of Charlotte at an appropriate psychiatric center. Although respondent "never authorized the evaluation", she did transfer temporary custody of Charlotte to petitioner on April 12, 1998 so that they could authorize the treatment. It is not alleged and does not appear from the record that Charlotte's evaluation was delayed by any action or failure to act on the part of respondent. Indeed, respondent's April 24, 1998 petition for custody alleged that her consent to temporary placement of Charlotte on April 12, 1998 was authorization for the requested evaluation which was performed at the facility in Steuben County on April 13, 1998. Since we find that respondent did authorize treatment, no parental misconduct occurred.

Second, petitioner failed to produce sufficient evidence concerning Charlotte's mental or emotional condition before, on and after April 12, 1998 to establish that an impairment occurred or that there was an imminent danger of an impairment of Charlotte's emotional or mental health resulting from respondent's action or inaction on April 12, 1998. Neither caseworker interviewed Charlotte's brother or anyone else, other than Charlotte, who was present at the time of the alleged attempted suicide. The only witnesses produced by petitioner at the fact-finding hearing were the two caseworkers who testified at length about respondent's uncooperative behavior in attempting to obtain her authorization for Charlotte's April 12, 1998 psychological evaluation, but knew little about a suicide attempt by Charlotte two months earlier, a resulting one-day referral to the Steuben County facility for evaluation and previous efforts by respondent to obtain counseling services for herself and Charlotte. No medical testimony was offered, no medical records from any health care facility were introduced and Charlotte did not testify. On this record, it is clear that petitioner has failed to demonstrate how respondent's apparent refusal to authorize an immediate psychological evaluation of Charlotte on April 12, 1998 impaired or posed an imminent danger of impairing her mental or emotional condition (*see, Matter of Jennifer N. [Janine O.], supra*, at 972-973; *Matter of William EE. [Donald EE.], supra*, at 976).

Lastly, our decision should not be read as an approval of respondent's inappropriate response in dealing with her daughter Charlotte's obvious needs. Rather, this case is decided solely on petitioner's failure to sustain its burden of proof in this neglect proceeding.

Cardona, P. J., Crew III, Peters and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the amended petition as to respondent's neglect of Charlotte XX.; amended petition dismissed as to Charlotte XX.; and, as so modified, affirmed.