■ In the Matter of CHRISTOPHER JJ. and Others, Children Alleged to be Abused and/or Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KIMBERLY JJ., Appellant. [721 NYS2d 692] —Lahtinen, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered March 29, 2000, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be neglected.

Respondent and Thomas JJ. (hereinafter the father) are married and are the parents of three sons and a daughter born in 1983, 1985, 1995 and 1986, respectively. In September 1999 respondent was informed by their daughter that she had been sexually abused by the father. Respondent brought the child to the State Police and, as a result of statements by the child and admissions by the father, the father was arrested and charged with various sex crimes. Several days later petitioner filed a Family Court Act article 10 petition against respondent and the father alleging child abuse and neglect of all four children. Family Court issued a temporary order of protection (see, Family Ct Act § 1029) which, inter alia, prohibited contact with the children by the father and ordered him to stay away from the family residence. The next day, petitioner requested temporary removal of the children from respondent's custody and after a hearing and a finding that removal was necessary (see, Family Ct Act § 1027), Family Court ordered the children placed in petitioner's custody. In October 1999, petitioner filed a supplemental petition based upon facts that occurred after the filing of the original petition. At the conclusion of the fact-finding hearing, Family Court determined that the father abused and neglected the children and that respondent neglected them.* After a dispositional hearing, Family Court placed the children in the custody of petitioner for 12 months, directed respondent and the father to participate in various services and issued an order of protection. Respondent now appeals, arguing that petitioner failed to establish by a preponderance of the evidence the impairment of the children's physical, mental or emotional condition or that such impairment was attributable to the unwillingness or inability of respondent to exercise a minimum degree of care.

Initially, we note that a neglected child is a child less than 18 years of age "whose physical, mental or emotional condition

---

* Petitioner withdrew the allegations of abuse against respondent.

has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent * * * to exercise a minimum degree of care * * * in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof" (Family Ct Act § 1012 [f] [i] [B]). Impairment of emotional health or mental or emotional condition must be clearly attributable to the unwillingness or inability of respondent to exercise a minimum degree of care (see, Family Ct Act § 1012 [h]). The minimum degree of care standard requires an objective evaluation of respondent's actions in light of what a reasonable and prudent parent would have done (see, Matter of Jessica YY., 258 AD2d 743) so as not to pose a risk of impairment to the child or place the child in imminent danger of impairment (see, Matter of Travis XX., 224 AD2d 787, 789). To support a finding of neglect petitioner must prove both parental misconduct and harm or potential harm to a child (see, Matter of Ronnie XX., 273 AD2d 491, 493) by a preponderance of the evidence (see, Family Ct Act § 1046 [b] [i]; see also, Matter of Tammie Z., 66 NY2d 1, 3).

In our view the proof presented by petitioner provided a sound and substantial basis for Family Court's determination that respondent neglected her children and established that respondent's understanding of her parental duties was "fundamentally flawed" (see, Matter of Nathaniel TT., 265 AD2d 611, 614, lv denied 94 NY2d 757). Petitioner's proof included testimony from the children's protective services caseworker and the daughter's counselor. The caseworker indicated that, based on his investigation, it was his opinion that respondent placed her interests and the interests of the father above those of the children. The caseworker's opinion was supported by respondent's statements to him that if any sexual abuse happened again she would not tell anybody, that she could not deal with both the children's problems and her own problems, that she could not handle her daughter's current actions and that she told the two older boys they had better find a place to live. However, when asked what support services she needed to help her deal with those problems, she responded, "I need my husband back. I need nothing else."

The daughter's counselor provided further proof that respondent did not properly understand her parental duties, testifying that respondent ignored her daughter's request to sit in on the child's first counseling session and that respondent stated in front of the children that she would put the children up for adoption if the temporary order of protection was continued.

According to the counselor, this statement was detrimental to the children's well-being. The testimony of the caseworker and the daughter's counselor also established that the children were upset by the entire incident, that respondent's sons placed blame for the situation on their sister who felt inappropriate guilt over the sexual abuse and that respondent did little or nothing to help the children, especially her victimized daughter, through this traumatic time.

For her part, respondent admitted making the statements attributed to her by the caseworker and the daughter's counselor, claiming to be angry and frustrated at the time each was made. She also testified that she and the father spent several days at the parties' residence while the temporary order of protection prohibiting his contact with the children was in effect, forcing the children to stay with other family members and friends. Perhaps the most convincing proof that respondent's parental judgment was impaired was elicited by the Law Guardian on cross-examination when respondent admitted that she attempted to explain the father's abuse of their daughter by blaming it on medication he was taking.

Respondent's statements and actions, which Family Court found had "to have a dramatic impact" and to be "extremely disturbing" to the children, demonstrated an "impaired level of parental judgment" (*Matter of Daniella HH.*, 236 AD2d 715, 716) on the part of respondent which created a substantial risk of harm to the children (*see, Matter of Kaitlyn R.*, 267 AD2d 894, 897). Accordingly, we conclude that the evidence in the record sufficiently supports Family Court's finding of direct and derivative neglect of all four children by respondent.

Mercure, J. P., Spain, Carpinello and Rose, JJ., concur. Ordered that the order is affirmed, without costs.