■ In the Matter of MEGAN G. and Another, Children Alleged to be Abused and Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHAEL G. et al., Appellants. (Proceeding No. 1.) In the Matter of MONICA G., Respondent, v COLEEN G., Appellant, et al., Respondent. (Proceeding No. 2.) [737 NYS2d 684] —Spain, J. Appeals (1) from an order of the Family Court of Clinton County (Lawliss, J.), entered October 6, 2000, which granted petitioner's application, in proceeding No. 1 pursuant to Family Court Act article 10, to adjudicate respondents' children to be abused and neglected and entered an order of protection, and (2) from an order of said court, entered November 6, 2000, which, inter alia, granted petitioner's application, in proceeding No. 2 pursuant to Family Court Act article 6, for sole custody of respondents' children.

Respondents are the parents of two minor children, Megan G. (born in 1988) and Brian G. (born in 1996), and one adult child, petitioner Monica G. (born in 1979). In May 2000, petitioner Clinton County Department of Social Services (hereinafter petitioner) commenced proceeding No. 1 pursuant to Family Court Act article 10 to adjudicate the two minor children to be abused and neglected as a result of respondents' use or abuse of alcohol. Thereafter, with respondents' consent, Family Court issued a preliminary order of protection permitting the minor children to remain at home with respondents and, inter alia, placing respondents under the supervision of

petitioner. The order directed respondents not to consume alcohol at any time, to follow the treatment recommendations of petitioner, to attend an alcohol abuse program and to refrain from domestic violence and offensive acts toward the children. In June 2000, Monica initiated proceeding No. 2 against respondents, initially seeking visitation with her minor siblings pursuant to Family Court Act article 6 and, by amended petition, seeking sole custody of the children.

Following a lengthy fact-finding hearing in the Family Court Act article 10 proceeding, Family Court found that the minor children were abused and neglected by respondents and ordered that, pending disposition, temporary custody of the children be awarded to Monica with visitation to respondents. After a dispositional hearing, the court entered an order of disposition placing the children with Monica for a period of one year with visitation to respondents and directing respondents to, inter alia, refrain from consuming alcohol, attend and follow the treatment plan of the local alcohol program and cooperate with petitioner. Respondents appeal from that order.

The custody petition filed by Monica was settled on stipulation of the parties, with sole custody of the children to Monica subject to, inter alia, respondents having visitation and being entitled to seek a modification of the custody order upon their successful completion of the alcohol treatment program without being required to show any further change in circumstances. A custody order was entered from which the mother has appealed.

We affirm, first rejecting respondents' contention that Family Court's findings as to abuse and neglect are not adequately supported. Parental misconduct and harm, or potential harm to children as the result of such misconduct, must be established by a preponderance of the evidence (*see, Matter of Ronnie XX.*, 273 AD2d 491, 493) and Family Court's inquiry focuses upon whether the behavior of a parent toward a child requires the aid of the court (*see, Matter of Catherine KK.*, 280 AD2d 732, 734). Further, a child may be adjudicated abused or neglected without proof of actual injury so long as a preponderance of the evidence supports a finding that the child was placed in imminent danger of physical harm (*see*, Family Ct Act § 1012 [f] [i] [B]; *Matter of Scott M.*, 284 AD2d 589, 591) or in danger of serious injury (*see*, Family Ct Act § 1012 [e] [ii]).

Here, in large measure, Family Court was presented with credibility issues, the resolution of which it specifically articulated on the record and to which we accord great deference (*see, Matter of Catherine KK., supra* at 735; *Matter of Katie R.*, 251 AD2d 698, 699, *lv denied* 92 NY2d 809). Ample evi-

dence was introduced at the fact-finding hearing establishing respondents' abuse of alcohol. Caseworkers testified that Megan had reported that, as a result of respondents' drinking, they would pass out and she would have to care for her younger brother, and each of her parents would drink and drive with the children in the vehicle. Specifically, Megan had informed one caseworker that on February 1, 2000, respondent Colleen G. (hereinafter the mother), with Megan and Brian in the vehicle, drove into a snowbank after consuming alcohol and that a passerby, who stopped after the accident, had refused to allow the mother to drive home believing that she was intoxicated. The mother denied being intoxicated, but Megan's account of this incident was corroborated by the passerby, who testified that the car swerved back and forth prior to going off the road, and when she stopped, she smelled alcohol on the mother's breath and, based on her observations and experience, concluded that the mother was intoxicated. Megan also reported that in January 2000, respondent Michael G. (hereinafter the father) assaulted her mother, and he was arrested and put in jail.

The testimony of caseworkers also established that the father admitted to, at times, drinking a six-pack of beer a day and occasionally becoming intoxicated and that the mother recognized that their drinking was a problem and admitted to sometimes drinking up to six glasses of wine a day and occasionally becoming intoxicated. One caseworker testified that she made an unannounced visit to respondents' home on May 24, 2000, at which time she observed the father asleep on a couch and the mother smelled of alcohol, had glassy eyes, slurred speech and her emotions were varied and mixed. At this visit, the mother informed the caseworker that, prior to her arrival, she had driven the children to a relative's home, and Megan later reported that the mother had driven them after consuming alcohol.

Monica also testified that her parents would often pass out from drinking, forcing her to care for the minor children, and they had each operated motor vehicles in an erratic fashion with the children as passengers while, or soon after, consuming alcohol to the point of intoxication. Further, Monica testified as to the history of her parents' excessive drinking habits and intoxication as she observed them.

The mother testified and admitted that she drinks two to six glasses of wine per day and that, in January 2000, the father assaulted her and was arrested in the presence of Megan. She also testified that, at the time of the assault, the father had

been drinking heavily. Despite all the evidence to the contrary, the mother insisted that her consumption of alcohol has never interfered with her care for her children. She conceded that she has an alcohol problem, but claimed that she has totally abstained since being ordered to do so by Family Court in May 2000 and has cooperated with the local alcohol abuse program. Other witnesses testified on behalf of respondents, some of whom were aware of respondents' drinking, generally observing, inter alia, no problems in their care for their children.

Notably, the father failed to testify at the fact-finding hearing, thereby permitting Family Court to draw the strongest inference against him which the opposing evidence would allow (*see, Matter of Jared XX.*, 276 AD2d 980, 983). With that in mind and giving due consideration to Family Court's superior position to resolve credibility issues, we find sufficient record evidence to establish that respondents each placed the children at risk and failed to properly care for them due to their excessive consumption of alcohol and by operating motor vehicles while their ability was impaired by alcohol (*see, Matter of Katie R.*, 251 AD2d 698, 700, *supra*). Sufficient evidence also supports Family Court's conclusion that the children's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of * * * [respondents'] misus[e] [of] * * * alcoholic beverages to the extent that [they] lose[] self-control of [their] actions" (Family Ct Act § 1012 [f] [i] [B]; *see, Matter of Ian DD.*, 252 AD2d 669). Likewise, the finding that the children were abused is amply supported in the record evidence which established that respondents created a substantial risk of serious physical injury to the children (*see*, Family Ct Act § 1012 [e] [ii]; *Matter of Marissa RR.*, 266 AD2d 751; *see also, Matter of Katie R.*, *supra* at 700).

We reject the father's contention that the hearsay statements of Megan were not sufficiently corroborated to support findings of abuse and neglect. Pursuant to Family Court Act § 1046 (a) (vi), out-of-court statements of children are admissible when corroborated by " '[a]ny other evidence tending to support' their reliability" (*Matter of Nicole V.*, 71 NY2d 112, 118, quoting Family Ct Act § 1046 [a] [vi]; *see, Matter of Kaitlyn R.*, 267 AD2d 894, 896). "The final determination of whether the evidence corroborates the child's statement is left to Family Court which has 'considerable discretion to decide whether the child's out-of-court statements describing incidents of abuse or neglect have, in fact, been reliably corroborated and whether the record as a whole supports a finding of abuse [and/or ne-

glect]' " (*Matter of Kaitlyn R., supra* at 896, quoting *Matter of Nicole V., supra* at 119). Here, Megan's statements pertaining to the father's abuse or misuse of alcohol and driving while under the influence of alcohol with the children as passengers were collectively corroborated by the testimony of Monica, the mother, the caseworkers and the father's sister. Accordingly, the record as a whole supports the findings of abuse and neglect as to the father.

We also reject respondents' assertion that Family Court erred in conducting a *Lincoln* hearing with Megan outside the presence of their counsel and without asking respondents to submit questions. A request to hold a *Lincoln* hearing with Megan was made during fact finding but, when respondents objected, Family Court denied the request. During the dispositional phase of the proceeding, when the court announced that it was about to meet with Megan and her Law Guardian in a *Lincoln* hearing, no objections were made. Respondents, therefore, have failed to preserve their claim for this Court's review (*see, Matter of Jennifer WW.*, 274 AD2d 778, 779, *lv denied* 95 NY2d 764). Significantly, the findings of abuse and neglect had already been made.

We next reject respondents' contention that Family Court abused its discretion by removing the children from their custody and placing them with Monica, their adult sibling, arguing that such placement was not in the children's best interests. "The paramount issue in a dispositional hearing is the best interest of the child, and an inquiry into the child's best interest involves consideration of the parent's ability to supervise the child and any potential threat of future abuse or neglect * * *" (*Matter of Kathleen OO.*, 232 AD2d 784; 786 [citation omitted]; *see, Matter of Millard v Clapper*, 254 AD2d 640). Notably, where, as here, the children were removed from the parents' custody and placed with an older sibling, Family Court must consider not only the custodian's ability to provide adequate shelter, but also all facts and circumstances relevant to the children's best interests (*see, Matter of Harriet U. v Sullivan County Dept. of Social Servs.*, 224 AD2d 910, 911).

It is clear from the record that Family Court considered the relevant factors and sufficient evidence was presented at the hearings to demonstrate that the children's best interests were served by placement with Monica given the risk of harm and lack of appropriate supervision resulting from respondents' abuse of alcohol (*see, Matter of Amber L.*, 260 AD2d 673, 674-675). Besides the evidence adduced at the fact-finding hearing, the testimony of the child protective caseworker at the

dispositional hearing and that of respondents, together with the reports from the alcohol and mental health agencies, support the conclusion that respondents continued to deny the seriousness of, and lacked insight into, their serious alcohol dependency problems.

Furthermore, evidence at the dispositional hearing, including a recent mental health follow-up report on the mother's progress, established that while they had been encouraged by petitioner to seek help as early as January 2000 and ordered to seek alcohol abuse treatment in May 2000, respondents had only recently begun alcohol abuse treatment. More importantly, neither respondent presented any independent evidence from which it could even be inferred that they conscientiously were addressing or, indeed, had even acknowledged the gravity of their alcohol dependency. Moreover, it was shown that Monica was employed on a full-time basis and could provide the children with an adequate home, albeit that of her boyfriend's parents,* until she could find a home for herself and the children. Accordingly, the record as a whole demonstrates that it was in the children's best interests that they be in the sole custody of Monica under the supervision of petitioner for the ordered one-year period and that Family Court's determination should not be disturbed.

Finally, in light of the mother's consent to the custody order, we reject her challenges to that order and, as noted, the father has not appealed from that order. We have considered respondents' remaining contentions and find they are without merit.

Mercure, J.P., Crew III, Carpinello and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.

* We note that the parents of Monica's boyfriend had a distant history of alcohol abuse. However, the record also shows that they have been sober for over 15 years and that petitioner, after an investigation, was of the opinion that their home was a safe and suitable environment for the children.