Matter of Department of Social Servs. v Margaret M. (2004 NY Slip Op 50320(U))

[*1]

Matter of Department of Social Servs. v Margaret M.

2004 NY Slip Op 50320(U)

Decided on April 21, 2004

Family Court, Nassau County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 21, 2004

Family Court, Nassau County,
In the Matter of the Department of Social Services, on behalf of MARY M., a Child under the Age of Eighteen Years Alleged to be Neglected by
against
MARGARET M. and MICHAEL M., Respondents.
Docket No: NN-9067-2003

Ruth C. Balkin, J.
By Petition dated August 1, 2003, Petitioner Department of Social Services (hereinafter referred to as the "Agency") commenced the instant proceeding pursuant to Family Court Act § 1012(f)(i)(A), seeking a determination that the child, Mary M. (DOB 01/31/1989), has been educationally neglected by her parents, Respondents Margaret and Michael M. (hereinafter "Respondents"), in that she has been chronically absent from school without legal excuse for periods lasting several days and weeks in October through December 18, 2002, and several months from December 19, 2002, to June, 2003.
This Court conducted a Fact Finding Hearing on the issue of educational neglect commencing on February 6, 2004 and concluding after several days of Hearing on April 16, 2004. During the course of the Hearing, this Court had the opportunity to observe the demeanor and credibility of the witnesses, including the Respondent Parents. The Court afforded counsel the opportunity to submit legal memoranda and reserved decision on the issues involved.
 I.
Born on January 31, 1989, Mary's academic history at the Long Beach School District (hereinafter "School District") has not been an easy one. As early as the second grade, the School District became concerned with her academic progress and her reading scores. In the third grade, Mary was screened by the School District's Committee on Special Education for learning disabilities, but Respondent Parents were informed that she was not eligible for special education services at that time. Year after year, Mary was tested at reading below grade level, apparently showing difficulty with reading skills. With school attendance, Mary managed to pass her classes and be promoted to higher grades. However, she failed several major academic subjects in the sixth and seventh grades and had to go to summer school in 2001.
[*2]
The Vice Principal of the School District, Margaret Ronai, who is in charge of the discipline, attendance and curriculum development offices, testified that Mary never has had behavioral or serious academic problems. Rather, Mary has shown a chronic absenteeism which has negatively impacted her progress in school and hindered her efforts in maintaining a passing grade, especially at age 13 during the 2002-2003 school year.
In October and November, 2002, Mary had six absences with four excused absences. Her serious attendance problems started in early December, 2002, when she had 14 days of unexcused absences without the provision of any medical excuse or any other documents. In January 2003, there were 19 unexcused absences, and the School District dispatched Ms. Ronai, a Social Worker and a Guidance Counselor to the Respondents' home without success as no one was there. On January 28, 2003, a School Superintendent spoke to Respondent Mother and offered to send someone to speak to her at home or work to assist in bringing Mary back to school, but Respondent Mother refused any help or the scheduling of a meeting.

Mary's absences thereafter continued in an exacerbated manner and, in fact, Mary did not return to school in January, February, March, April, May or June of 2003. All of the absences were without providing any documentary excuse. Despite contacting the Respondents' home almost everyday and sending letters, Ms. Ronai received no response or any form of contact from either Respondent at any time. According to Ms. Ronai, Mary was failing her classes in the eight grade and had to be left behind academically. Faced with Respondents' lack of cooperation, and the failure to provide any excuse for the absences or proof of home schooling, or any other certified academic program, the School District contacted Nassau County Department of Social Services' Child Protective Services.
By Petition dated August 1, 2003, the Agency commenced the instant proceeding pursuant to Family Court Act § 1012(f)(i)(A), seeking a determination that Mary be declared educationally neglected by Respondents. Specifically, the Petition alleges causes of action grounded on educational neglect in, inter alia, that:
1. Respondents have failed to supply Mary with an adequate education in accordance with Education Law § 3205, though financially able to do so or offered financial or other reasonable means to do so, inasmuch as said child has a long history of truancy despite the Respondents' awareness, thus impairing her mental and emotional health;
2. Mary has been absent from school, without legal excuse, for approximately 150 days from October, 2002 to June, 2003;

3. Respondent Mother admitted that Mary did not attend school for long periods of time and is failing classes due to her numerous absences;

4. On March 25, 2003, Respondent Mother stated to caseworker that Mary has been verbally abused by school personnel and that she will be transferred to another [*3]school district. However, the Mother never followed through and Mary continued failing to attend;

5. Respondent Father knew of the absences and that Mary is failing academically as a result, but has taken no steps to effectively correct the problem.

The matter appeared before this Court on August 13, 2003, when the family was placed under the Agency's temporary supervision by Temporary Order of Supervision of same date. Among other things, the purpose of that Order was to make sure that Mary did not miss more than one day of school without a doctor's excuse. In order to address the Respondents' concerns about the School District, this Court also issued a "Cooperation Order" pursuant to Family Court Act § 255, dated August 20, 2003, ordering the Long Beach School District to render such assistance and cooperation to enable Mary to obtain expedited review by the Committee on Special Education for any appropriate placement for the 2003-2004 school year. Mary eventually returned to Long Beach school in December 2003, after the Court intervened as a result of the filing of the Neglect Petition. Her attendance has remained good.
In opposing the Agency's case in chief at the hearing, the Respondent Mother acknowledged that Mary had been absent from school for a large part of the 2002-2003 school year. However, she testified that Mary's absences were the direct result of the School District's inadequacies in diagnosing and addressing her daughter's serious learning disabilities. According to the Mother, these inadequacies were not helped by the treatment Mary allegedly received at the hand of teachers and school staff.
 The Respondent Mother complained about the way the teachers handled Mary's homework issues and the fact that they would make Mary stay after school to complete homework assignments she did not understand. Not only did Respondent Mother consider the teachers' actions to be punishment, but she believed that Mary's teachers were not reviewing her daughter's tests and homework, and that the teachers were harassing and making fun of Mary.
In December, 2002, a meeting was convened at the school with Respondents, their attorney, the School District's attorney, Mrs. Tom, the principal of the Middle School, other representatives and Mary. The topic of the conference was Mary, her 8th grade school placement and homework issues. It was determined that if any incidents took place that adversely affected Mary, she would leave class and go directly to the Principal's office and immediate intervention would take place by the Principal. Based on this outcome, Mary briefly returned to school in December, 2002. On December 16, 2002, Respondent Mother received a letter from one of Mary's teachers, indicating that Mary did not complete a homework assignment. Mary became very upset and stressed. On December 18, 2002, Mary was passing through the hall and ran into Mrs. Raber, one of her former teachers who failed her in 7th grade. According to Mary, Mrs. Raber said, that "I hear you are not doing well in school. I want to let you know that you are going to fail high school and college and your life will come out to nothing." That was the last time that Mary attended school until Court intervention approximately one year later, in December 2003.
[*4]
Respondent Mother testified that when Mary stopped attending school in December 2002, she was home alone, with neighbors available to look in on her if needed. Both parents were working. Mary was 13, when she first refused to attend school. There was no academic or social program put in place for Mary other than an evening course at PACE, once or twice a week for about 3½ months, and a computer program course called "Hooked on Phonics." The School District never received any documentation regarding attendance at the PACE program. In any event, these meager attempts to secure educational assistance for Mary did not follow any State education curriculum, nor did Respondent Mother by her own admission, have the necessary educational skills to home school Mary.
The Respondent Father, for his part, failed to testify and confirm or deny the Respondent Mother's version of the events leading to this neglect proceeding.

On December 20, 2002, Respondent Mother took Mary to Dr. Richard Zeiger, a clinical psychologist, who treated Mary during the relevant time period and saw Mary on twenty two separate occasions. Both Mary and her parents were very cooperative with Dr. Zeiger and Dr. Zeiger did not believe that Respondent Parents encouraged Mary to stay home. According to Respondent Mother, Dr. Zeiger recommended that Mary get a fresh start in a different school district. He was opposed to forcing the child to return to the Long Beach school, which would have ignored her anxiety, however, he never recommended that the child not attend school. Dr. Zeiger testified that a more positive educational environment was required for Mary.
According to Dr. Zeiger, Mary informed him that she stopped going to school because she was picked on by teachers, and the teachers as well as her friends would make derogatory comments about her. She indicated that she was uncomfortable in school, uncomfortable on the school bus, and her friends would make fun of her. Mary stated, that when she thought of school, her heart would beat rapidly. She was adamant about not returning to school unless changes were made in the way she was treated; however, sometimes she expressed the desire to return to school if changes could be made. Dr. Zeiger believed that Mary was very sensitive, but in a positive sense. He diagnosed Mary as having a Generalized Anxiety Disorder- DSM 300.02, which was in the nature of a panic disorder rather than exhibiting classical anxiety symptoms.
Dr. Zeiger acknowledged that when Mary was home, she had little to do, and was falling behind academically. He contacted the School District, and spoke to representatives who believed that Mary was misunderstanding well meant comments. Despite this fact, Dr. Zeiger never discussed any accommodation that the School was attempting to make with Mary, nor did he or Respondent Parents ever have follow up conversations with the Principal, who Dr. Zeiger was directed to contact if he needed to speak with the school.
Dr. Zeiger testified that he spoke with Respondent Mother who had very negative feelings about the Long Beach School District and in his opinion, good reasons for the negative feelings. However, Dr. Zeiger found that when Mary did return to Long Beach school in December 2003, she was happy to be back in school. He did believe that her absence from school had a negative [*5]effect on the child.
II.
The child Mary was interviewed in Chambers by the Court in the presence of the Law Guardian and the court stenographer. Counsel for both parties and the Law Guardian were also permitted to question the child. The minutes of the child's interview are an integral part of the record of this proceeding and have been duly considered by the Court, but no further reference will be made to protect the confidentiality and contents of her testimony. Her testimony remains sealed for any further review.
 
III.
The Law Guardian recommended that the child be adjudicated neglected based on the fact that the Respondent Parents reacted to the School District in a legally unacceptable manner, and they were complicit in permitting the child to stay home from school. The Law Guardian believed that the Parents made no attempt to find an alternate school, relocate to another school district, or meet with the District in an attempt to find an accommodation which would help Mary. The Law Guardian believed that the failure of the child to receive her education during the 2002-2003 school year, adversely impaired her welfare and social development.
IV.
Family Court Act § 1012(f)(i)(A) defines a neglected child as one "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his[/her] parent * * * to exercise a minimum degree of care * * * in supplying the child with adequate * * * education in accordance with" the Education Law,[FN1] "though financially able to do so" (see Matter of Chad V., 265 AD2d 607, lv denied 94 NY2d 757; Matter of Jeremy VV., 202 AD2d 738). The minimum degree of care standard has been identified as an objective evaluation of the parent's actions "in light of what a reasonable and prudent parent would have done" (see Matter of Kenneth V., 307 AD2d 767; Matter of Christopher JJ., 281 AD2d 720). To establish such neglect by a preponderance of the evidence (see Matter of Katlyn GG., 2 AD3d 1233, 1234; Matter of Garth S., 309 AD2d 940, 941; Matter of Katie R., 251 AD2d 698, 699), the child's absence from school need not be permanent and accompanied by a total lack of contact between the parent and the school. Rather, "the record need only establish a significant, unexcused absentee rate that has a detrimental effect on the child's education" (Matter of Ember R., 285 AD2d 757, 758; Matter of Aishia O., 284 AD2d 581).
Applying these principles to the matter at bar, this Court finds that the child Mary has been [*6]educationally neglected by the Respondent Parents. The record reveals that Mary had approximately 150 illegal absences from school and, as a result, had a significant decrease in her grade point average to far below passing level during the 2002-2003 school year. Her attendance record reflects that she had not attended the minimum number of days required to advance to the next level. This Court fully credits the testimony of the School District representatives in that they made multiple accommodations to attempt to assist Mary and her family in improving her school attendance and academics in 2002-2003. Respondent Parents were advised on many occasions of the school services available to them and provided direct access to the School Principal, but they failed to utilize the resources made available to them. Despite their love and best intentions toward Mary, the Respondent Parents were unwilling to compel Mary's attendance at the Long Beach School District.

Although the Respondents argue that Mary's poor attendance was caused not by their neglect, but by the School District's inadequacies and the teachers' harassment at school, these claims are not supported by the evidence. Respondent Mother's testimony, implicating some kind of conspiracy or vendetta by School officials against her daughter and her progress, is simply incredible and not supported by the credible evidence. Respondent Mother never made an appointment with the Principal or Vice Principal after Mary stopped attending school to have the School District speak with any purported offending teacher. These alleged incidents were never reported to the Principal.
With this overwhelming evidence of unexcused absences, the burden then shifted to the Respondent Parents to offer some evidence that Mary was attending school, was receiving the required instruction elsewhere or was justified in her absences (see Matter of Heith S., 189 AD2d 875, 876; Matter of Christa H, 127 AD2d 997). This they have failed to do. The Court finds that Respondent Mother's explanations for the excessive number of Mary's absences was unconvincing. There was no evidence submitted to the Court that the Respondent Parents provided alternate school education or arranged their work schedule for home schooling or tutoring. That they enrolled Mary in supplemental or after-school programs, like New Fundamental Pace or "Hooked on Phonics" Programs, is patently insufficient to supplant a full time education as required by the Education Law. The Respondent Parents thus utterly failed to offer any evidence that Mary was attending school or receiving an alternate education.
Instead, the Respondent Parents decided to leave Mary home alone for months, in essence, in social isolation, allegedly until a transfer to another school district was approved. There were no alternate educational plans, instructional processes or activities with other children. It cannot be seriously disputed that this isolation has impaired Mary's health, education and welfare (see Matter of Dyandria D., 303 AD2d 233; Matter of Catherine K., 224 AD2d 880, 881). That Mary had previously suffered from socialization problems and reading difficulties does not excuse the Respondent Parents' lack of commitment to her school attendance. To the contrary, it would appear that her infirmities would have been only ameliorated by her continuous attendance at school something which a reasonable and prudent parent would have encouraged, but that the Respondent Parents refused to do. This conclusion is supported by this Court's negative [*7]inference against the Respondent Father based on his failure to testify and either deny or confirm the evidence presented against his total inaction in guarding his daughter's best interest.
Nor was Dr. Zeiger's testimony sufficient to excuse Mary extraordinary number of absences. Although the Respondent Parents could be commended for showing some concern in taking Mary to the doctor on December 20, 2002, shortly after her pattern of unexcused absences commenced, Dr. Zeiger never advised them to keep the child at home or away from school for such an extended period of time. There is no evidence that his diagnosis of Mary, as suffering Generalized Anxiety Disorder, required constant in-home care, hospitalization or even medication. To the contrary, he recognized early on Mary's desire to go to school and he started advocating to her parents for a transfer to another school district. Yet the Respondents never came up with an alternative realistic plan for Mary's education.

Despite Dr. Zeiger's and Respondent Mother's testimonies, there is no concealing the fact that Mary has improved tremendously, at least in her school attendance, during the pendency of these neglect proceedings against the Respondent Parents. Only when the Respondent Parents were faced with judicial intervention and the Agency's supervision did they ensure her continuous attendance at the Long Beach Middle School. This has done a world of good for Mary. Dr. Zeiger reported the positive effect that returning to school has had on Mary and she has confirmed this. She fed off of the Respondent Parents' criticisms of the School District, and the atmosphere they created of mistrust of the school.
Based on the excessive number of unexplained absences and failing school record, this Court concludes that Mary was and remains in imminent danger of becoming mentally and emotionally impaired by the Respondent Parents' conduct in failing to provide a full time education. In conclusion, the best interests of Mary require that this Court make an affirmative finding against Respondents.
V.
In accordance with the foregoing and based upon all the evidence submitted including the witnesses' testimony and Mary's in camera interview, the Court hereby finds by a preponderance of the evidence that Mary is educationally neglected by the Respondents Margaret and Michael M. and an affirmative finding of neglect shall be so entered against them. The matter shall appear before the undersigned for dispositional proceedings on May 3, 2004, at 9:00 A.M.
Pursuant to Section 1113 of the Family Court Act, an appeal from this order must be taken within 30 days of receipt of the order by appellant in Court, 35 days from the date of mailing by the Clerk of the Court, or 30 days after service by a party or the law guardian upon the appellant, whichever is earliest.
This constitutes the Decision and Order of the Court.
[*8]
Dated: Westbury, New York
 April 21, 2004.
E N T E R:
 
 HON. RUTH C. BALKIN, J.F.C.
To: Jeffrey F. Pam, Esq.
529 May Lane
East Meadow, New York 11554
Robert Kurtz, Esq.
 1205 Franklin Avenue
Garden City, NY 11530
 Kimberly Grosch, Esq.
 Deputy County Attorney
 1200 Old Country Road
 Westbury, New York 11590
Decision Date: April 21, 2004

Footnotes

Footnote 1: Article 65, part 1 of the Education Law provides that each minor, age six to 16, shall attend upon full time instruction. It is the statutory duty of the parents or persons in parental relation to cause such minor to attend upon instruction as required (Education Law § 3212[2][b]).