■ In the Matter of ANESIA E. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; ANTOINETTA W., Appellant. [805 NYS2d 623]—

In a child protective proceeding pursuant to Family Court Act article 10, the mother appeals from a fact-finding order of the Family Court, Kings County (Hamill, J.), dated July 9, 2004, which, after a fact-finding hearing, found that she abused the subject child pursuant to Family Court Act § 1012 (e) (ii) and neglected the subject child pursuant to Family Court Act § 1012 (f) (i) (B).

Ordered that the order is affirmed, without costs or disbursements.

In February 2002 the mother brought the subject child, who was just over one year old, to a hospital, where she claimed that the child was experiencing seizures daily, and sought medical intervention. The child was then subjected to a video electroencephalogram. Although the test gave no indication that she suffered a seizure, the mother, who had been observing the child throughout the testing period, reported to the doctors that she had suffered three seizures.

Debra Esernio-Jenssen, M.D., who examined the child, and observed her for the next three days, concluded that she was not suffering from seizures. Dr. Esernio-Jenssen then examined hospital records from the child's prior hospitalizations. Indeed, the mother reported that she had taken the child to hospitals on 14 prior occasions, where she claimed that the child, who

was hospitalized on five of those visits, was suffering from seizures. The records reflected that the child had undergone a magnetic resonance imaging, multiple CT scans, electroencephalograms, and a spinal tap. In addition, she had also been given anti-convulsive medication, as well as sedatives.

At the fact-finding hearing, Dr. Esernio-Jenssen explained that the "unnecessary" tests that the mother caused the child to be subjected to, as well as the "unnecessary" medications that were administered to the child, were "potentially harmful." For example, Dr. Esernio-Jenssen noted that when the child underwent the spinal tap, she could have developed an infection, or lapsed into respiratory arrest. Similarly, when she was sedated, she also could have gone into respiratory arrest.

Contrary to the mother's contention, the record supports the Family Court's conclusion that the petitioner established, by a preponderance of the evidence (see Family Ct Act § 1046; *Matter of Tammie Z.*, 66 NY2d 1, 3 [1985]), that the child was an abused child, in that the mother "create[d] or allow[ed] to be created a substantial risk of physical injury to [the] child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Family Ct Act § 1012 [e] [ii]; *cf. Matter of Rashard D.*, 15 AD3d 209, 210-211 [2005]; *Matter of Megan G.*, 291 AD2d 636, 637-639 [2002]). Furthermore, the record likewise supports the court's conclusion that petitioner established by a preponderance of the evidence that the child was a neglected child (see Family Ct Act § 1012 [f] [i] [B]; *Matter of Suffolk County Dept. of Social Servs. [Ellen S.]*, 215 AD2d 395, 396 [1995]).

The mother's remaining contentions are without merit. Florio, J.P., Krausman, Skelos and Covello, JJ., concur. [*See* 4 Misc 3d 1006(A), 2004 NY Slip Op 50736(U) (2004).]