■ In the Matter of NICOLETTE I., a Child Alleged to be Neglected. SCHUYLER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LESLIE I., Appellant. (Proceeding No. 1.) In the Matter of JULIE YY., Respondent, v CHERYL ZZ., Respondent, and LESLIE I. et al., Appellants. (Proceeding No. 2.) In the Matter of NICOLETTE I., a Child Alleged to be Neglected. SCHUYLER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHELLE I., Appellant. (Proceeding No. 3.) [974 NYS2d 144]—

Garry, J. Appeals (1) from two orders of the Family Court of Schuyler County (Argetsinger, J.), entered September 30, 2011 and December 23, 2011, which granted petitioner's applications, in proceeding Nos. 1 and 3 pursuant to Family Ct Act article 10, to adjudicate respondents' child to be neglected, and (2) from an

order of said court, entered December 29, 2011, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject child.

Respondent Leslie I. (hereinafter the father) and respondent Michelle I. (hereinafter the mother) are the parents of a child (born in 1998). The child lived with them in the Village of Burdett, Schuyler County until 2007, when she was placed with the paternal grandmother, respondent Cheryl ZZ., after the father consented to a finding of neglect in prior proceedings involving his mental health, abuse of drugs and alcohol, and failure to supervise the child (see generally Matter of Nicolette I., 56 AD3d 1080 [2008]). In October 2007, the mother and father stipulated to a custody order pursuant to Family Ct Act article 6 that required them, among other things, to re-engage with substance abuse and mental health services as a condition of regaining custody. In July 2010, the child returned to live with the father and mother pursuant to a modified order that granted sole legal and physical custody to the father and required "strict compliance" on his part with conditions related to the prior proceedings. The order noted that the mother's ongoing medical and mental health needs obliged the father to provide her with consistent care, assure medication compliance and prevent the abuse of drugs and alcohol.

In October 2010, the mother left the family home and alleged, among other things, that the father was frequently drinking alcohol to excess. In November 2010, she consented to the child's placement in foster care, and petitioner Schuyler County Department of Social Services (hereinafter DSS) commenced the first of these proceedings alleging that the father had neglected the child. DSS later commenced the third proceeding alleging that the mother had neglected the child. In the interim, the child's paternal aunt, petitioner Julie YY. (hereinafter the aunt), commenced the second proceeding seeking custody of the child. The father sought to sever the hearings in the two neglect proceedings, and Family Court denied this motion. Following a fact-finding hearing, the court granted the petitions and found the child to be neglected. The mother appeals from this order. The court then conducted a dispositional hearing and entered an order in the neglect proceedings and a final order in the custody proceeding that, among other things, granted joint legal custody pursuant to Family Ct Act article 6 to the father, mother and aunt and physical placement to the aunt. The father and mother each appeal from these orders.

Initially, Family Court's refusal to sever the hearings did not

deprive the father of due process.[1] He claims that he was prejudiced by evidence admitted against the mother, in particular her prior statements regarding his alleged alcohol abuse.[2] However, the court ruled at the outset that it would consider the mother's out-of-court statements only against her and not against the father, and thereafter scrupulously abided by this distinction, repeatedly reminded the parties of its ruling, and did not rely on evidence pertaining to the mother in rendering its decision as to the father. As the two neglect proceedings clearly presented common questions of law and fact and the father failed to demonstrate any resulting prejudice, we find no abuse of the court's discretion in hearing them together (*see Matter of Rita XX.*, 249 AD2d 850, 852 [1998]; *Matter of Amy M.*, 234 AD2d 854, 855 [1996]).

The father next contends that Family Court's finding of neglect should be reversed as DSS failed to demonstrate by a preponderance of the evidence that he misused alcohol, was noncompliant with ordered treatment, or that these issues caused actual or imminent harm to the child.[3] A child is neglected when his or her "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship . . . by misusing a drug or drugs [or] . . . alcoholic beverages to the extent that [the parent] loses self-control of his [or her] actions" (Family Ct Act § 1012 [f] [i] [B]). Here, Family Court took judicial notice of the prior neglect proceedings against the father that had involved, among other things, allegations of substance abuse and had led to the July 2010 order requiring "strict compliance." A DSS caseworker testified that, in November 2010, the child stated that she had found the father asleep on the kitchen floor, and was frightened as she could not waken him. The following day, the caseworker made an unannounced visit to the home. The father initially refused to answer the door, and when he did so at the child's urging, the caseworker smelled alcohol, the father admitted to drinking several beers, and his behavior was erratic and belligerent. The father acknowledged using alcohol on the day of this visit and on at least one other occasion while the child was in his custody; his testimony regarding

---

1. The two neglect proceedings were not consolidated, but were heard together (*see Matter of Rostkowski v Baginski*, 96 AD3d 1066, 1067 [2012]).

2. The mother recanted these statements before the hearing.

3. The mother's brief raises no issues related to Family Court's determination that she neglected the child.

how often this had occurred was notably contradictory and inconsistent. He further acknowledged use of marihuana during the pertinent time period, but claimed that this occurred only once, and without his knowledge as someone had mixed it with his tobacco. Both a former friend and the mother testified that the father had used alcohol and/or drugs in their presence during the subject period.[4] The father contends that the testimony of these two witnesses should not have been credited; however, the issues he raises were fully explored on cross-examination, and this Court gives deference to Family Court's resolution of credibility issues (*see Matter of Dakota CC. [Arthur CC.]*, 78 AD3d 1430, 1430-1431 [2010]; *Matter of Megan G.*, 291 AD2d 636, 637 [2002]).

A psychologist who conducted a court-ordered evaluation testified that the father suffered from bipolar disorder with psychotic features, as well as narcissistic elements with paranoia and described him as delusional and alcohol-dependent; he recommended psychotherapy, medication and abstention from alcohol and marihuana. A mental health counselor testified that, during the pertinent period, the father had attended all scheduled sessions, but stated that he was doing so solely because it was required by Family Court. The father reportedly spent most of his counseling time complaining about the restrictions on his use of alcohol, at times acknowledging his continued use and at other times denying it. This counselor opined that the father had made little or no progress toward his stated goals and had gained no insight into the impact of his alcohol use on himself or his family. During one session he smelled of alcohol and appeared to be intoxicated, but denied having consumed any. The father refused the recommendation for a psychiatric evaluation and told the counselor that he was not interested in taking medications.[5]

The credible testimony established that—despite the child's previous removal from the father's care for reasons that included substance abuse, as well as the conditions to which he was subject after she was returned to his custody—he repeatedly became sufficiently intoxicated to "impair[ ] his ability to make appropriate parental judgments . . . [and] to provide proper care for [her]" (*Matter of Chassidy CC. [Andrew CC.]*, 84 AD3d 1448, 1449-1450 [2011]). In view of all of the evidence, we

4. Family Court's ruling restricting use of the mother's out-of-court statements did not apply to this in-court testimony.

5. The father confirmed that he was unwilling to engage in mental health treatment, stating that he did not need it and that it was "oppression and tyranny."

find a sound and substantial basis in the record to support Family Court's determination (*see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Dakota CC. [Arthur CC.]*, 78 AD3d at 1430-1431).

Next, the mother and father challenge the child's placement with the aunt pursuant to Family Ct Act article 6. Where a relative has petitioned pursuant to Family Ct Act article 6 for custody of a child subject to proceedings under Family Ct Act article 10, Family Court may grant custody to the relative without the parents' consent upon finding, among other things, that the placement is in the child's best interests (*see* Family Ct Act § 1055-b; *Matter of Arlene Y. v Warren County Dept. of Social Servs.*, 76 AD3d 720, 720-721 [2010], *lv denied* 15 NY3d 713 [2010]). Initially, we note that the statutory standard for such a placement is addressed to the child's best interests rather than the parents' needs (*see* Family Ct Act § 1055-b [a] [ii]); we therefore reject the contention that this placement constituted a de facto termination of parental rights by depriving the mother and father of DSS services necessary to assist them in maintaining their relationship with the child. Further, as the child was placed pursuant to Family Ct Act § 1055-b, the parties' arguments regarding obligations related to other provisions are inapposite.

Next, we disagree with the contention that placement with the aunt was not in the child's best interests. Family Court accepted the aunt's testimony establishing that she and the child had developed close familial bonds and that, while residing with the aunt, the child's financial circumstances would be improved and she would be able to continue her previously established bonds with extended family and friends and to continue in her prior school and counseling relationships. Notably, the aunt lived in the same Pennsylvania home where the child had previously resided for several years with her grandmother, who had moved to a nearby residence. The child's counselor and her foster mother both testified that the child's mental state and mood had improved during her stay in foster care, especially after living with the aunt became a possibility. Considering the aunt's ability to provide the child with a safe and stable home, the child's previous lengthy residence outside the parents' custody, the mother's inability to care for her, and the father's long-standing alcohol dependency and inability to engage successfully in mental health treatment, we find a sound and substantial basis in the record for the determination that placement with the aunt is in the child's best interests (*see Matter of Louis N. [Dawn O.]*, 98 AD3d 918, 919 [2012]; *Matter of James GG. v Bamby II.*, 85 AD3d 1227, 1228-1229 [2011]).

However, we agree with the mother and father that Family Court erred relative to visitation. The court is required to determine this issue in accord with the child's best interests and, unless visits would be harmful to the child, must " 'structure a schedule which results in frequent and regular access by the noncustodial parent' " (*Matter of Taylor v Jackson*, 95 AD3d 1604, 1605 [2012], quoting *Matter of William BB. v Susan DD.*, 31 AD3d 907, 908 [2006]). Here, Family Court directed that the father and mother were to have "reasonable and liberal visitation, under circumstances deemed appropriate by the [aunt]," further noting that "the aunt is a strong individual with whom the discretion to determine what limits [should be placed on] visitation should be vested." While we recognize that provisions for "reasonable and liberal" visitation sometimes allow appropriate flexibility when a set schedule is impractical (*see e.g. Matter of Bedard v Baker*, 40 AD3d 1164, 1165 [2007]; *Matter of Storch v Storch*, 282 AD2d 845, 846 [2001], *lv denied* 96 NY2d 718 [2001]), these circumstances ordinarily involve the parties' cooperation and agreement, and such orders often state explicitly that visitation will take place "as the parties mutually agree." Here, however, the court inappropriately delegated its obligation by giving the aunt the sole discretion to decide both the frequency and circumstances under which any visitation might occur, including whether the visits would be supervised. As the parents contend, the record reveals that they have a strained relationship and lack of communication with the aunt. The aunt testified that she intended to impose multiple restrictions on the parents' access to the child and to require the parents to provide all transportation. It is Family Court's nondelegable responsibility to determine whether such conditions are in the child's best interests. Failing to do so was in error, and the matter must be remitted to the court for that purpose (*see Matter of Taylor v Jackson*, 95 AD3d at 1604-1605; *Matter of Holland v Holland*, 92 AD3d 1096, 1096-1097 [2012]; *Matter of Taylor v Fry*, 63 AD3d 1217, 1219 [2009]; *Matter of William BB. v Susan DD.*, 31 AD3d at 908).[6]

Rose, J.P., Stein and McCarthy, JJ., concur. Ordered that the order entered September 30, 2011 is affirmed, without costs. Ordered that the orders entered December 23, 2011 and December 29, 2011 are modified, on the law, without costs, by

---

**6.** It appears from representations by the attorney for the child that further visitation proceedings were pending at the time of oral argument. In the apparent absence of any superceding orders, however, we have no basis on which to conclude that the matter is moot (*see Matter of Whiting v Ward*, 97 AD3d 861, 862 [2012]).

reversing so much thereof as provided for visitation; matter remitted to the Family Court of Schuyler County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.