## (September 16, 1981)

■ In the Matter of CHARLES N. and Another. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant-Respondent; BRIANNE N., Respondent-Appellant; CHARLES N., Respondent. — In a proceeding pursuant to article 10 of the Family Court Act for an adjudication of child neglect, the petitioner and the respondent Brianne N. cross-appeal (by permission) from an order of the Family Court, Nassau County (Diamond, J.), entered July 23, 1981, which, after a fact-finding hearing, adjudicated Jessica N. and Charles N. to be neglected children, and ordered them placed in the "temporary custody" of petitioner, "with physical custody to the parents", pending a dispositional

hearing. Order reversed, on the law, without costs or disbursements, and petitions dismissed. On May 26, 1981 the N. family resided in an efficiency-type unit of the Bethpage Motel in Bethpage. At about 7:00 P.M., 15-month-old Jessica entered the bathroom unnoticed by her parents, who were watching television in the combination living room-bedroom. Perhaps with the aid of her three-year-old brother Charles, Jessica climbed into the sink and turned on the hot water. She was discovered in a matter of minutes, but by that time she had suffered second and third degree burns on her lower extremities. The Family Court, noting that the parents were aware of their daughter's tendency to climb into sinks and other places, held that the parents failed to take the proper precautions. According to the court, "some piece of furniture or other items could have been placed in front of the door so that the child or children could not get into the bathroom." The Family Court also found "negligence" in the parents' failure to apply to the petitioner for public assistance to help stabilize a deteriorating financial situation. We reverse. At most, the hearing testimony establishes that, on one occasion, the parents negligently failed to supervise their daughter. "A finding of neglect should not be made lightly, nor should it rest upon past deficiencies alone. It is for the court to determine if at the time of hearing the children are suffering or likely to suffer from neglect [citation omitted]" *(Matter of Daniel C.,* 47 AD2d 160, 164; see Family Ct Act, § 1051, subd [c]). There is no evidence that the parents intentionally injured Jessica. Nor was there a showing of prior similar accidents or of routine endangerment of the children. In fact, the record contains a number of indications that these parents are willing to adequately care for their children and that they are capable of doing so. For example, Jessica's injuries were quickly discovered by her mother and her parents immediately took their daughter to the hospital. Thereafter, the mother regularly attended weekly hospital conferences to discuss the progress of her child and received instruction in caring for her daughter upon her discharge. Accordingly, this court has no basis upon which to conclude that the children "are suffering or likely to suffer from neglect" *(Matter of Daniel C., supra,* p 164). Moreover, in New York there is no tort of negligent supervision *(Holodook v Spencer,* 36 NY2d 35) and many of the reasons supplied by the *Holodook* court for declining to recognize a tort duty to supervise one's children also cut against the ready use of a neglect proceeding to intervene between parent and child when no more than negligent supervision is alleged (see *Holodook v Spencer, supra,* pp 49-51). Finally, we also reject the Family Court's finding that the children are neglected because of their parents' failure to promptly apply for public assistance (see Family Ct Act, § 1012, subd [f], par [i], cl [A]). There is no dispute that the children have always been adequately fed, clothed and sheltered. The testimony at the hearing provides no reason to believe that the condition of the children is in "imminent danger of becoming impaired" (see Family Ct Act, § 1012, subd [f], par [i]). Lazer, J.P., Gulotta, Margett and Bracken, JJ., concur.