■ In the Matter of MICHAEL I. and Another, Children Alleged to be Abused. SULLIVAN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHIRLEY H., Appellant. [714 NYS2d 156] —Peters, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered December 21, 1998, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be abused.

Respondent is the mother of Michael I. and Leonard H., twins born in 1997. After an incident on September 22, 1997 whereupon it was learned that the children had suffered physical abuse, petitioner filed a petition alleging neglect and abuse against both respondent and the children's father, Michael HH., who was married to respondent and living with her and the children at the relevant time.

During the fact-finding hearing, summary judgment was granted against the father based upon his conviction of five counts of assault in the first degree and two counts of endangering the welfare of a child stemming from the September 22, 1997 incident. He did not appeal that determination. With respect to respondent, after extensive testimony, Family Court found that she neglected the boys by leaving them in the care of their father and abused them by allowing serious injuries to be inflicted upon them. After a dispositional hearing, the court ordered that neither parent have any direct contact with the boys until after their 18th birthday.

Respondent appeals, solely challenging the sufficiency of the evidence presented at the fact-finding hearing to support the finding of neglect or abuse. It is axiomatic that any such deter-

mination must be based upon a preponderance of the credible evidence (*see*, Family Ct Act § 1046 [b] [i]). Moreover, "proof of injuries sustained by a child * * * of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect" (Family Ct Act § 1046 [a] [ii]), thus raising a rebuttable presumption that the parent, here respondent, was responsible for the abuse (*see*, *Matter of Dawn D.*, 204 AD2d 634, 635, *lv denied* 84 NY2d 807). While no party asserts that respondent ever physically assaulted these children, she may be found to have neglected them pursuant to the Family Court Act if she failed to exercise a minimum degree of care in providing for their proper supervision or guardianship by allowing harm to be inflicted upon them (*see*, Family Ct Act § 1012 [f] [i] [B]). Further, if she allowed such injuries to be inflicted "by other than accidental means" (Family Ct Act § 1012 [e] [i]) or allowed the children to remain in their father's care where there was "a substantial risk of physical injury" (Family Ct Act § 1012 [e] [ii]), abuse can be found provided that she " 'knew or should reasonably have known' that the child[ren] [were] in danger" (*Matter of Robert YY.*, 199 AD2d 690, 692, quoting *Matter of Sara X.*, 122 AD2d 795, 796, *appeal dismissed* 69 NY2d 707).

Upon this record, objective evidence demonstrates "that a reasonably prudent parent would have acted differently and, in so doing, prevented the injury" (*Matter of Robert YY.*, *supra*, at 692; *see*, *Matter of Joseph DD.*, 214 AD2d 794, 794-795). Medical testimony indicated that these 3½-month-old infants suffered from 61 broken bones between them, some new and some in a state of healing. Such horrific injuries included fractures to their arms, legs, ribs and skulls with no genetic or metabolic reason to account for the injuries. While testimony revealed that caseworkers and others failed to observe signs of multiple fractures which could have included excessive crying, pain, swelling, redness, deformity and sleeplessness, medical testimony explained that such outward manifestations could sometimes last just a few short hours—enough time for respondent, as primary caretaker, to have observed them but not necessarily long enough for professionals and paraprofessionals to notice.

Testimony further established respondent's failure to provide proper supervision or guardianship by her premature removal of Leonard from the hospital after birth at the demand of the father, it being the father's birthday, causing the original pedi-

atrician to refuse future care of the children. By her own admission, respondent observed her husband verbally abuse the children and ignore her request that he cease picking them up by their arms. She also admitted to having told several people that the father hated Michael since birth, blaming him for stealing food in utero from Leonard to account for Leonard's low birth weight. For this reason, he discussed changing the baby's names so Michael would not be named after him. She further admitted that he hated their crying and would yell and curse at these infants, causing her much concern. Testimonial evidence also revealed that respondent told numerous people that her husband was emotionally, verbally, and physically abusive to her, making her afraid to leave the boys alone with him; she denied making such statements at the hearing. Finally, she admitted that while at a domestic violence shelter two weeks before the September 22, 1997 incident, she had stated that she believed her husband might hurt the children.

The topic of child abuse was also raised by respondent during a home visit by a caseworker on September 22, 1997. While discussing this issue, respondent focused on the father and kept pointing to him. Testimony also revealed that when respondent's sister-in-law questioned her about the cause of a bruise on Michael's forehead, she quickly dismissed it as caused by a blow from Leonard's foot when they were together in the crib. Respondent witnessed at least one other prior injury to Michael when she found her husband standing over Michael's crib with mucus and blood coming from the child's mouth; he repeated to her that he was sorry.*

Despite this history, respondent left Leonard alone with the father for two hours on September 21, 1997 and left Michael alone with him for about a half hour on September 22, 1997. Upon her return on September 22, 1997, the father left and respondent noticed that Michael was having difficulty breathing. A hysterical call to 911 from a neighbor's house resulted in the child's transport to the hospital, where he, and later Leonard, were examined and determined to have sustained multiple injuries, with Michael having a life-threatening brain trauma.

Upon this record, we conclude that Family Court, acting within its discretion after hearing the testimony and observing the demeanor of the witnesses before it, properly concluded that respondent's testimony detailing her lack of knowledge of his propensity to hurt these children was incredible (*cf.*, *Matter of Janique Y.*, 256 AD2d 1053). Thus, the findings of abuse and

---

* She later denied to a public health nurse that there was blood.

neglect against respondent were properly supported (see, *Matter of Brandon C.*, 247 AD2d 380; *Matter of Carrie R.*, 156 AD2d 756).

Cardona, P. J., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.