■ In the Matter of Evelyn X. and Another, Children Alleged to be Neglected. Clinton County Department of Social Services, Respondent; Susan X. et al., Appellants. [736 NYS2d 549] —Cardona, P.J. Appeals (1) from an order of the Family Court of Clinton County (Lewis, J.H.O.), entered October 7, 1999, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children to be neglected, (2) from an order of said court (Lawliss, J.), entered February 10, 2000, which granted

---

* Defendant does not claim that the frisk occurred in an area encompassed by the videotape.

petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children to be neglected and placed them in petitioner's custody for a period of 12 months, and (3) from an order of said court (Lawliss, J.), entered February 10, 2000, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to find respondents in violation of prior orders of the court.

Respondent Susan X. (hereinafter the mother) and respondent William Y. (hereinafter the father) are the parents of four children, including Evelyn (born in 1985) and William (born in 1986). Respondents reside in the City of Plattsburgh, Clinton County, with Evelyn, William and their developmentally disabled adult daughter, Chastity. One or both of the respondents were the subjects of 11 "indicated reports"* to the State Central Register of Child Abuse and Maltreatment (hereinafter Central Register) between 1988 and 1996. All the reports, except for two, involved inadequate guardianship of Chastity or their other child, Linda, now an adult.

On May 5, 1999, following another report to the Central Register, petitioner removed Evelyn from her home after she told the State Police that her father had struck her several times. Petitioner filed a petition on May 10, 1999, pursuant to Family Court Act article 10, against both parents alleging abuse and neglect of Evelyn and William. On May 13, 1999, Evelyn was returned home following the issuance of a temporary order of protection. A fact-finding hearing was held on September 15, 1999, during which the 11 indicated reports were admitted into evidence as well as proof concerning the May 4, 1999 incident that was the subject of the May 5, 1999 report. Family Court (Lewis, J.H.O.) dismissed the allegations of abuse, however, it determined that both children were neglected. In the order of disposition entered October 7, 1999, respondents were placed under petitioner's supervision for six months and mandated to comply with certain terms and conditions, including observing an order of protection. A week later, on October 14, 1999, Family Court, following a hearing, ordered the temporary removal of Evelyn and William in response to incidents which occurred that morning and the preceding day. On October 15, 1999, petitioner filed two new petitions against respondents alleging abuse and neglect of both children. Additionally, petitioner filed a petition against respondents alleging violations of the orders of disposition and protection entered

---

* Social Services Law § 412 (12) defines an "indicated report" as one "made pursuant to this title if an investigation determines that some credible evidence of the alleged abuse or maltreatment exists."

October 7, 1999 and the earlier temporary order of protection entered May 13, 1999.

Following a fact-finding hearing, Family Court (Lawliss, J.) dismissed that portion of the petition alleging abuse, however, it found the children to be neglected. The court also determined that respondents willfully violated its orders of disposition and protection. On January 13, 2000, after a dispositional hearing, the court, inter alia, placed the children in petitioner's custody for a period of 12 months from December 6, 1999. On the findings of willful violation of its orders, the court sentenced the father to six months in jail and the mother to 60 days in jail. The parties appeal from the order of disposition entered October 7, 1999 and from both orders entered February 10, 2000.

Respondents first contend that there was insufficient evidence to warrant findings of neglect under either Family Court article 10 petition. Under that article, a neglected child is defined as a child less than 18 years of age: " 'whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent * * * to exercise a minimum degree of care * * * in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof' " (*Matter of Christopher JJ.*, 281 AD2d 720, 720-721, quoting Family Ct Act § 1012 [f] [i] [B]). In order to establish neglect, a petitioner must submit proof by a preponderance of the evidence that "[t]he child[ren] * * * have been harmed or threatened with harm" (*Matter of Naticia Q.*, 195 AD2d 616, 618; *see, Matter of Jessica YY.*, 258 AD2d 743, 744). In addition, the evidence adduced at the hearing must be viewed in the light most favorable to the petitioner (*see, Matter of William EE.*, 157 AD2d 974, 974).

Addressing first the proof submitted on the May 10, 1999 petition, the evidence primarily consisted of the investigations of Darcy Sutherland and Dana Le Page, senior child protective services caseworkers, and State Police Trooper Sonya Atkinson concerning the allegation that on August 21, 1996, the father punched William in the face, causing redness and swelling on his right cheek; the allegation by Evelyn that her father struck her several times in the stomach and arm on May 4, 1999, causing her pain which lasted all day; and the introduction of nine other indicated reports mainly for inadequate guardianship and family violence spanning the years 1988 through 1992. The testimony of Le Page indicated that she interviewed

Evelyn, William and the mother regarding the August 21, 1996 incident and each confirmed William's statement that the father had punched him in his right cheek. This proof established harm to the child through excessive corporal punishment (see, Family Ct Act § 1012 [f] [i] [B]) and, therefore, was legally sufficient to support a fact-finding of neglect against the father.

We do not, however, find the evidence legally sufficient to support a fact-finding of neglect against the mother with respect to William. At the time of the incident, the mother and Chastity were inside a store. The record does not establish by a fair preponderance of the evidence that, by permitting William to remain in the parked car with his father and Evelyn, she was placing William at risk of injury. We cannot say "that a reasonably prudent parent would have acted differently" (Matter of Robert YY., 199 AD2d 690, 692). Furthermore, the indicated reports filed with the Central Register between 1988 and 1992, while demonstrating that Evelyn and William witnessed family violence, were not sufficient, standing alone, to demonstrate that the mother failed to exercise a minimum degree of care in reference to this child. Accordingly, we find the evidence adduced on the May 10, 1999 petition legally insufficient to support a finding of neglect of William by the mother.

Turning to the May 4, 1999 incident involving Evelyn, our examination of the neglect finding reveals that it was entirely based upon Evelyn's out-of-court statements. Without corroboration, the statements would be legally insufficient to support a finding of neglect (see, Family Ct Act § 1046 [a] [vi]; Matter of Nicole V., 71 NY2d 112, 117-118). Family Court Act § 1046 (a) (vi) provides that a child's out-of-court statements "may be corroborated by '[a]ny other evidence tending to support' their reliability * * * [which] may include, but is not limited to, the types of evidence defined in other paragraphs of section 1046 (a)" (Matter of Nicole V., supra at 118 [citation omitted]). Here, proof of neglect of William arising out of the August 21, 1996 incident (see, Family Ct Act § 1046 [a] [i]) and the pattern of abusive behavior and exposure to family violence established through the indicated reports filed with the Central Register (see, Family Ct Act § 1046 [a] [v]) provide sufficient corroboration of Evelyn's out-of-court statements. Accordingly, we find the evidence legally sufficient to support a finding of neglect of Evelyn by the father based upon his infliction of harm upon her through excessive corporal punishment and against the mother who, though present, failed to take any steps to protect

the child, thereby allowing such harm to be inflicted (*see*, Family Ct Act § 1012 [f] [i] [B]; *Matter of Kathleen GG.*, 254 AD2d 538, 540).

Next, we examine the evidence adduced on the October 15, 1999 petition, which resulted in an adjudication on February 10, 2000 that the children were neglected. The evidence revealed that on September 27, 1999, William and Evelyn started punching each other and the father broke it up by throwing a large plastic jug at William, striking him on the back of the neck. The mother, also present, did not intervene. William attempted to tackle his father and, as a result, the father pushed him to the floor. When Evelyn noticed blood on the floor she called the police and State Trooper Steven Guay responded. He noted no signs of injury to William but did see some blood on the floor. After questioning William, Evelyn and respondents, Guay made a report to the Central Register that was investigated and subsequently indicated.

Additional evidence established that on October 13, 1999 William and Evelyn argued over the use of his art supply kit. They called the mother at work and she indicated that she would take care of it when she arrived home. When the mother retrieved the art kit some pieces were broken. William became angry with her, grabbed her around the neck and began choking her. The mother pushed him away and punched him in the face. He fell to the floor and the father, who had been in the bedroom, came out and sprayed William with the kitchen sink sprayer. According to William, he sustained a bloody nose and a cut lip. Both children indicated that they did not summon the police because respondents had taken the phones away. The following day, William did not want to get up for school. As a result, in order to motivate him, the father let this child's dog outside knowing it had a tendency to run off. Chastity attempted to retrieve the dog, however, the animal was struck and killed by a passing vehicle. As they were leaving for school, the father taunted the child with a mocking comment about the dead animal. During the ride to school, the father told William that it was his fault the dog died because he did not get up when told. At school, William, crying and very upset, went to the counselor and said that he did not want to go to class. The counselor observed the child's emotional state and also that William's lip was swollen and bruised. At the same hearing, there was also proof submitted that the father had repeatedly called Evelyn various vulgar names and that the mother never took steps to prevent him from doing so.

William's out-of-court statements were corroborated by the

observations of the school counselor, the photographic evidence of his swollen lip, and Evelyn's cross-statements that she witnessed the incidents that occurred between him and respondents (*see, Matter of Nicole V.*, 71 NY2d 112, 124, *supra*; *Matter of Akia KK.*, 282 AD2d 839, 840). Evelyn's out-of-court statements regarding the vulgar names uttered by the father were corroborated by William's statements that he heard the father call her the names frequently.

An objective evaluation of respondents' behavior in these instances leads us to conclude that their actions, as parents, were not reasonable and prudent. In our view, the evidence presented was legally sufficient to support findings of neglect of (1) William by the father and the mother based upon their infliction of harm and by allowing such harm to be inflicted by the other parent and (2) Evelyn by the father and the mother based upon their allowing to be inflicted a substantial risk of harm.

Next, since respondents have served their sentences for civil contempt, their appeal from the order of contempt is, therefore, moot (*see, Matter of Schoharie Co. Dept. of Social Servs. [Darlene KK.] v Howard LL.*, 285 AD2d 677, 678; *Matter of Madison County Support Collection Unit [Bordell] v Drennan*, 156 AD2d 883, 883). Finally, considering the re-occurrences of family violence in the children's residence despite Family Court's prior issuance of orders of protection and taking into consideration that petitioner made reasonable efforts to eliminate the need for continued removal of the children, we cannot say that Family Court abused its discretion in directing placement of the children in petitioner's custody (*see*, Family Ct Act § 1052 [b] [i] [A]; [ii]).

Mercure, Crew III, Spain and Carpinello, JJ., concur. Ordered that the order entered October 7, 1999 is modified, on the law, without costs, by reversing so much thereof as adjudicated William X. to be a neglected child by respondent Susan X.; petition dismissed to that extent; and, as so modified, affirmed. Ordered that the order entered February 10, 2000 adjudicating the children to be neglected is affirmed, without costs. Ordered that the appeal from the order entered February 10, 2000 finding respondents in willful violation is dismissed, as moot, without costs.