Matter of Lester M. (2006 NY Slip Op 51943(U))

[*1]

Matter of Lester M.

2006 NY Slip Op 51943(U) [13 Misc 3d 1222(A)]

Decided on October 12, 2006

Family Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 12, 2006

Family Court, Richmond County
In the Matter of Lester M. A Child under Eighteen Years of Age Alleged to be Neglected by Navija M., Respondent.
NN-00578-06

Janet Chaplan, Esq.
Legal Aid Society
60 Bay Street
Staten Island, NY 10301
Victoria Gibbons, Esq.
ACS
51 Stuyvesant Place , 3rd Floor
Staten Island, NY 10301
Susanna Saul, Esq.
Legal Services of New York
36 Richmond Terrace
Staten Island, NY 10301

Catherine M. DiDomenico, J.
By Petition dated February 7, 2006, Petitioner, The Administration for Children's Services ("ACS"), commenced this neglect action against Respondent Mother, Navija M.. The Petition alleges that the subject child Lester M.' physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of the Respondent Mother to exercise a minimum degree of care in providing the child with proper supervision or guardianship. Specifically, the Petition alleges that Respondent Mother failed to adequately supervise Lester on February 4, 2006, at which time he sustained a 1st and 2nd degree burn on his arm. The Petition further alleges that the Respondent Mother neglected this child by failing to seek medical attention for the child, although Respondent Mother was aware of Lester's extensive burn history.
This is not the only child protective action involving this now three year old child. On May 31, 2005, when he was 18 months old, Lester sustained 2nd and 3rd degree burns over 30% of his body inflicted by Respondent Mother's then boyfriend, Hugo L. This act resulted in the filing of a child neglect and abuse Petition against Mr. L. and Respondent Mother on June 2, 2005. See ACS v. Hugo L., Navija M., NA 2204/05 (Fam. Ct. Richmond County) (Porzio J.). On June 2, 2006, Judge Porzio found that allowing Lester to remain home constituted imminent risk to his life, health or safety. Accordingly, Lester was remanded and placed in the care and custody of [*2]the Petitioner.
A finding of severe abuse was entered against Hugo L., after inquest, by Order dated October 11, 2005. The Petition was dismissed as against Respondent Mother after trial. See Order dated December 13, 2005. Lester was returned to Respondent Mother on January 11, 2006. On February 4, 2006, some three weeks later, Lester sustained another burn. This Court again removed Lester from Respondent Mother on February 28, 2006, and placed him back in the care of ACS in the physical custody of his maternal grandmother.
A fact-finding hearing on the instant petition was held on May 10, 2006, May 12, 2006, May 16, 2006, May 17, 2006, May 25, 2006, May 26, 2006, June 14, 2006 and July 12, 2006. At the fact finding hearing, ACS called four witnesses: (1) Ms. Glenda C., an ACS case worker, (2) Mary S., a pediatric nurse practitioner, (3) Annette M., a clinical nurse/medical case manager with Children's Aid Society, and (4) Merlyn J., a Children's Aid Society caseworker. Petitioner also introduced documents into evidence (Petitioner's 1-6). Respondent testified on her own behalf and also called Dr. Steven A., a board certified pediatrician, as an expert witness. Respondent introduced documents into evidence (Respondent's A; C). The Law Guardian presented no evidence at trial.
Findings of Fact
After considering the testimony of the witnesses who testified at the fact finding hearing and observing their demeanor, this Court credits the testimony of Petitioner's witnesses and makes the following findings of fact after trial.
Prior to Lester's return on January 11, 2006, the agency instructed Respondent Mother on such subjects as how to care for Lester's recovering burns; the importance of his continuing occupational and physical therapies, and safety precautions, including burn prevention. To illustrate the importance of burn prevention, Ms. M., a nurse from the Children's Aid Society, told Respondent Mother about another nurse's child who had been burned by a curling iron. Respondent Mother stated that the nurse in that story was "careless" for allowing the child to be burned in that way. The agency also provided Respondent Mother with an emergency medical beeper number and instructed her to contact the agency in the event that Lester sustained any injury, regardless of severity.
On February 4, 2006, while home alone with Respondent Mother, Lester suffered a 1st and 2nd degree burn to his arm, triangular in shape and 1 to 3 inches in diameter. According to Respondent Mother, this burn was sustained when Lester's arm made accidental contact with a curling iron she was using to curl her hair. Respondent Mother stated while she was sitting on her bed curling her hair, Lester was in the room jumping from the floor to her bed when he accidentally touched the iron.
Notwithstanding the Agency's instructions, Respondent Mother did not call the agency, [*3]and did not seek any medical attention at all for Lester, allegedly because she did not perceive the burn as serious enough to warrant emergency assistance. Moreover, although Respondent Mother concedes that Lester cried when burned, she did not put ice or cold water on the burn or administer any pain relief to him. Rather, she applied Sulfur Silvadine cream, previously prescribed for Lester's healing burns, which had no pain relief properties. When asked why she did not administer any pain relief, Respondent Mother claimed he stopped crying after awhile. She further stated that she had burned herself with the same curling iron earlier that evening, leaving a mark that later formed a scab which she removed herself.
Respondent admits she told no one that Lester had been burned until the next day, on February 5, 2006, when she told her mother. Lester's grandmother called the agency the following day on February 6, 2006. Ms. C., an ACS case worker, met Lester and his grandmother at St. Vincent's Hospital. The burn was diagnosed as a 1st degree burn with a 2nd degree burn in the center. He was treated and released.
The Court credits Dr. A.'s testimony that the burn sustained by Lester on February 4, 2006, was not life threatening, although parts of it was admittedly second degree. However, Dr. A.'s failure to examine Lester, and his failure to consider the fact that Lester was already recovering from burns on over 30% of his body at the time this additional burn was sustained, persuades this Court to afford limited weight to his testimony. The Court further notes that Dr. A. is not an expert in burns or burn care.
The Court does not credit at all the testimony of Respondent Mother. When attempting to explain how this accident happened, Respondent Mother's testimony appeared at times to be deliberately evasive and inconsistent. Compare Tr. 5/16/06 p. 95-96 with Tr. 5/17/06 p. 29. Accordingly, this Court has serious doubts as to the reliability of Respondent Mother's account of how this most recent burn was actually sustained.
The Applicable Law
A neglected child is defined as a child "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent ... to exercise a minimum degree of care .. in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof". Matter of Antonio NN., 28 AD3d 826 (3rd Dept. 2006); Fam. Ct Act. § 1012[f][i][B]). The statute establishes a " minimum baseline of proper care for children that all parents, regardless of lifestyle or social or economic position, must meet'". Matter of Jessica YY., 258 AD2d 743, 744 (3rd Dept. 1999). "Under such standard, parental behavior [is] evaluated objectively [according to] whether a reasonable and prudent parent would have so acted". Id. at 744, quoting, Matter of Katherine C., 122 Misc 2d 276, 278 (Family Ct. New York County) (Leddy, J.). A child's special vulnerabilities must be considered when determining the applicable standard of care. Matter of Sayeh R., 91 NY2d 306, 315 (1997) ("a parent fails to exercise a minimum degree of care in not responding to the special needs of a child, even when those needs [*4]may not seriously implicate general physical health".)
In order to establish neglect, petitioner must show, by a preponderance of the credible evidence, that the child has been harmed or threatened with harm. See Matter of Evelyn X., 290 AD2d 817, 819 (3rd Dept. 2002); Matter of Christopher JJ., 281 AD2d 720, 720-721 (3rd Dept. 2001). A single isolated incident may be sufficient to constitute child neglect if the parent was aware of, or should have been aware of, the intrinsic danger of the situation. Matter of Victoria CC. , 256 AD2d 931, 932-933 (3rd Dept.1998); see Matter of Jerrica J,. 2 AD3d 1161, 1163 (3rd Dept. 2003).
A Inadequate Supervision.
After carefully considering the testimony and documentary evidence introduced at this lengthy fact finding hearing, the Court finds that Respondent Mother failed to exercise a minimum degree of care in supervising Lester which caused the additional burn sustained to him on February 4, 2006. Specifically, this Court finds that Respondent Mother (1) failed to take adequate precautions to ensure that Lester was not burned again by intentionally using a hot curling iron where this 3 year old boy was actively playing, even though she was aware of the danger of using this instrument as evidenced by the fact that she had burned her own head using the same curling iron earlier that evening; (2) failed to seek any form of assistance for Lester after he was burned, although she had the agency's emergency beeper number, had a cell phone, could have asked her upstairs landlord to use the phone or could have walked a short distance to a pay phone located nearby, and (3) failed to apply ice, cool water or any other form of pain relief after he was burned. These facts support a finding of neglect against Respondent Mother. In re T'Yanna M., 27 AD3d 472 (2nd Dept. 2006).
Respondent Mother argues that a neglect finding cannot be sustained because this was an "isolated incident" which did not result in any actual impairment to Lester. This argument fails for several reasons. First, the law is clear that a child's special vulnerabilities must be considered when determining the applicable standard of care. In the Matter of Sayeh R., 91 NY2d 306 (1997). Accordingly, the fact that Lester has been burned previously is a necessary part of this analysis. See In Re Eric M., 90 AD2d 717 (1st Dept. 1982). Second, case law is replete with cases in which a neglect finding was sustained as a result of a single incident. In the Matter of Victoria CC, 256 AD2d 931 (3rd Dept. 1998); In the Matter of James HH; 234 AD2d 783 (3rd Dept. 1996).[FN1] Indeed, the prior case involving this child resulted in a finding of severe abuse arising out of a single incident in which burns were inflicted upon this child by Respondent Mother's boyfriend. See Order dated October 11, 2005.
[*5]
Last, it is well settled that actual impairment is not necessary to sustain a finding of neglect. See In the Matter of Marcus MM, 17 AD3d 747 (3rd Dept. 2005). Rather, imminent risk of impairment suffices. See FCA § 1012. Clearly, there is imminent risk of impairment where, as here, a Respondent Mother exercises such profound misjudgment and carelessness to allow a child already recovering from burns to play around a hot curling iron then fails to take any action whatsoever to determine the severity of the burn or to lessen any pain or discomfort caused by this injury.
B. Medical Neglect.
A finding of neglect may be sustained where it is proven that a child's physical condition has been impaired or is in imminent danger of becoming impaired as a result of a parent's failure to exercise a minimum degree of care in supplying the child with "adequate" medical care. Family Court Act § 1012(f)(i)(A). Adequate medical care does not require a parent to call a doctor every time a child is injured. See In Re Joseph L, 4 Misc 3d 1013(A) (Family Ct. Richmond County) (Porzio, J.). Rather the law requires that a physician be consulted "when such course would be undertaken by an ordinarily prudent and loving parent, solicitous for the welfare of his child and anxious to promote (the child's) recovery'". In Re Hofbauer, 47 NY2d 648, 655 (1979).
Applying this standard to this case, the Court finds that Respondent Mother's failure to seek any medical attention at all for Lester when he was burned constitutes medical neglect. See Matter of Naomi, 10 AD3d 684 (2nd Dept 2004) (failure to take child for medical appointment day after burn supported neglect finding); In re Richard S., 204 AD2d 636 (2nd Dept. 1994) (neglect found where, despite professed concern for well being of child, parent failed to get medical attention for burned child). Although Respondent Mother could have called 911 and had 24 hour access to an emergency medical beeper number, she did nothing. This decision resulted in some 2 days passing before this child was examined by any medical professional and no pain relief being given to him. Given the undisputed fact that Lester was already recovering from burns sustained on over 30% of his body, Respondent's failure to take action constitutes medical neglect.
Last, the Court notes as particularly disturbing Respondent Mother's failure to acknowledge that Lester was scalded by her then boyfriend which created the particularly fragile and vulnerable state in which Lester was returned to her. (Tr. 5/17/06 p.53, "I am not saying it wasn't water. I am saying that supposedly that's what he said"). This denial, coupled with her testimony that "no one would call ACS for what happened. If I'm mistaken I have not seen anybody's child taken away for for something like that", makes this Court seriously concerned about Respondent Mother's judgment and parenting ability and its effect on Lester's life and safety should he be returned to his mother at this time. See Tr. 5/16/06, p. 99.
CONCLUSION
[*6]
For the reasons set forth herein, the Court finds that Petitioner has proven, by a preponderance of the evidence, that Respondent Mother neglected the subject child Lester by failing to adequately supervise the subject child and by failing to provide adequate medical treatment for him.
E N T E R:
____________________________
CATHERINE M. DIDOMENICO
JUDGE, FAMILY COURT
RICHMOND COUNTY
Dated:Staten Island, New York
October 12, 2006

Footnotes

Footnote 1:Respondent Mother relies on In re Charles N., 83 AD2d 947 (2nd Dept. 1981) wherein a neglect finding was dismissed where a child climbed into a sink and turned on hot water causing injury. There, however, the child was not already suffering from healing burns and respondent parents sought prompt medical attention. Accordingly, that case is readily distinguishable from this case.