Matter of Christopher K. (2007 NY Slip Op 51110(U))

[*1]

Matter of Christopher K.

2007 NY Slip Op 51110(U) [15 Misc 3d 1142(A)]

Decided on May 30, 2007

Family Court, Monroe County

Kohout, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 30, 2007

Family Court, Monroe County
In the Matter of Christopher K., Tyler K. and Samual K. A Child Under Eighteen Years of Age Alleged to be Neglected by Jennifer K., Respondent.
NN-15060/15062-06

APPEARANCES:
Charles O. Baisch, Esq.
Deputy County Attorney
Attorney for Petitioner
Monroe County Department of Human Services
Jon M. Stern, Esq
Attorney for Respondent
Gerard M. LaRusso, Esq.
The Legal Aid Society
Law Guardian

Joan S. Kohout, J.
A petition was filed by the Monroe County Department of Human Services (hereinafter "DHS") on December 8, 2006 alleging that the respondent Jennifer K. neglected her children Christopher, born March 11. 1993, Tyler, born January 9, 1997 and Samuel, born November 6, 2000.
A fact-finding hearing occurred on April 6 and April 17, 2007. After the close of the petitioner's proof, the respondent moved for dismissal of the petition on the ground that DHS had failed to prove a prima facie case of neglect as defined by Family Court §1012[f]. The motion was granted regarding the children Christopher and Samuel and decision was reserved as to Tyler.
At the conclusion of the fact-finding hearing, the respondent renewed her request for a dismissal of the petition as to Tyler on the ground that the petitioner had failed to prove that any conduct or omission by the respondent resulted in an imminent danger of impairment to the child's condition. The law guardian took the position that he was unsure whether the proof rose to [*2]the level of neglect.
Based on the record presented, the court agrees with the respondent that DHS failed to prove that the respondent's acts or omissions resulted in an imminent danger to Tyler's physical, mental or emotional condition as required by Family Court Act §1012 [f][i] and that the petition must be dismissed.
Findings of Fact
Tyler K. was diagnosed with diabetes in April 2005 when he was hospitalized at Strong Hospital with abdominal pains, vomiting, fatigue and frequent urination. During his hospitalization, Tyler and his mother were provided information and instruction regarding diabetes. Tyler was prescribed insulin by injection.
After leaving the hospital, Tyler was referred to the clinic at Strong Hospital where his case was managed by Beverly Faro, a nurse practitioner, who is also a certified diabetes educator. Ms. Faro followed Tyler's treatment from April 2005 through December 2006 when the neglect petition was filed. Routine follow-up visits were scheduled approximately every three months and consisted of reviewing Tyler's activities, diet, insulin schedule, insulin dosages and blood glucose levels. Also, his hemogloblin was tested to determine the average amount of glucose present in his blood cells over the three month life of the cell. Ms. Faro requested that Ms. K. keep records of Tyler's blood sugar levels and bring them to the appointments. Notes contained in Tyler's medical records, which were received into evidence as Exhibit 1 [FN1] state that Tyler was giving himself his own injections with adult supervision and had virtually no symptoms associated with his diabetes other than dry skin. During the period covered by the petition, Tyler did not require hospitalization or any acute care.
During the April 11, 2006 clinic visit, Ms. Faro noted that Tyler's insulin dose was insufficient and attributed it to a misunderstanding by Ms. K. regarding the dose and "waning honeymoon." (Exhibit 1, April 11, 2006 note). Ms. Faro testified that during the early period after Tyler's diagnosis his pancreas was still producing some insulin and that this was called the honeymoon. Tyler's pancreas stopped producing insulin around the time of the April 2006 appointment. This was an expected stage in Tyler's diabetes and was addressed by adjusting his insulin. Ms. Faro recommended that Ms. K. keep in close contact regarding Tyler's levels and suggested that the school nurse might be able to help. Ms. Faro also recommended that Ms. K. write down Tyler's sugar levels.
Ms. Faro did not see Tyler between April 11, 2006 and September 19, 2006. It was about this time that child protective worker, Jennifer Guiles, became involved with the family.
Ms. Guiles, testified that she met the respondent in September 2006 after she was assigned to investigate a child protective referral alleging that there was no electricity in the home. On or about September 26, 2006 Ms. Guiles met with the respondent at her home. Ms. K. advised the caseworker that the electricity had been turned off and that she did not have money to turn it back on. She was hoping for a job. Ms. Guiles found the home to be neat and clean and offered to provide a food voucher to assist the family.
[*3]
Megan Isalaco, a preventive worker provided through St. Joseph's Villa, testified about Ms. K.'s financial difficulties and the assistance that she provided to the respondent. The family's financial problems and Ms. K.'s unemployment were also document in Tyler's medical records (Exhibit 1, September 19, 2006 note)[FN2].
During the September 19, 2006 clinic appointment, Ms. Faro reviewed Tyler's blood sugar levels with Ms. K., asked for records and tested Tyler's hemogloblin. She found the levels to be in the unacceptable range indicating that Tyler's average blood sugar was above the target range. There had been no "severe incident" and "no hypoglycemia.". Ms. Faro discussed with Ms. K. what circumstances should prompt a call to the clinic or possible hospitalization. Ms. Faro recommended that Tyler take his insulin at school, which was apparently agreed to by Ms. Faro since the medical note states, "Mom requests breakfast insulin at school."
Although Ms. K. did not present a log of Tyler's blood levels at the September 19th appointment, the medical note indicates that she provided Ms. Faro with information regarding fluctuations in her son's sugar levels and related his daily insulin dosages. Ms. Faro encouraged Ms. K. to be involved in improving her son's blood sugar control and requested that Tyler return in four weeks.
Ms. Faro did not see Tyler, however, until November 2006. Ms. K. told caseworker Jennifer Guiles that she did not have money for a bus pass because she used all her money to place a down payment to get her RG&E services turned back on.
The next clinic visit occurred on November 14, 2006 after Tyler had missed two scheduled visits. According to Ms. Faro's note for that date, Ms. K. reported her son's sugar levels and his total daily insulin amounts. During this visit, Ms. Faro noted that Tyler's blood glucose level was improved, but still very high. The medical note states that records were being received from the school nurse and that pre-lunch levels were normal "much of the time." Ms. Faro testified that she discussed the lack of records concerning blood levels with Ms. K.. There had been some issues with the school nurse giving the morning insulin, so that dose was being given at home. The nurse reviewed the danger signs associated with high blood sugar, such as increased urination, thirst, ketones in urine and nausea and what to do if these symptoms occurred. Ms. Faro also reviewed the long-term and short-term dangers of high blood sugar. The medical note indicated that there had been no problems or "severe episodes." Ms. Faro adjusted the insulin dose and faxed the dosing schedule to the school nurse.
During fall of 2006, Ms. Faro asked Ms. K. about child care arrangements for Tyler while she was a work. Ms. K. told the nurse that she had a care provider who had Type II diabetes.
Discussion
The neglect petition alleges two causes of action, failure by the respondent to provide food, clothing and shelter and failure to provide adequate supervision and guardianship by unreasonably inflicting or allowing to be inflicted harm or a substantial risk of harm.
[*4]
In order to prove neglect on the ground of failure to provide food, clothing and shelter, the petitioner must prove that the parent had or was offered the financial ability to provide for her child (see Family Court Act §1012[f][i][A]). "This provision is meant to ensure that parents are not labelled as neglectful merely because they are poor" (see Besharov, Practice Commentaries, Vol 29A, McKinney's, Family Court Act §1012 at 332 [1999]).
While there was proof that during September 2006 the respondent's home was without electricity, there was no proof that this placed Tyler in imminent danger or that Ms. K. had the financial means to avoid having her utilities shut off (see Family Court Act §1012 [f][i][A]). The respondent was unemployed at the time and apparently took steps to improve her situation after she returned to work in October. Ms. K. received emergency food assistance from St. Joseph's Villa worker Megan Insaloco and child protective worker, Jennifer Guiles. There was no proof that with this assistance Ms. K. was unable to provide food for Tyler.
The petition does not specifically plead a cause of action in medical neglect (see Family Court Act §1012[f][i][A]). However, the individual supporting allegations under the failure to provide food, clothing and shelter cause of action state that Tyler's medical providers wrote a letter stating that Tyler was "at imminent risk of hospitalization due to dangerously high glucose levels, indicative of inconsistent daily management and inadequate insulin doses" (Petition, paragraph 7). The petition further alleges that Tyler is possibly at risk of death. Additionally, it is alleged that Tyler missed 13 scheduled medical appointments.
None of these allegations were proved at the trial. The only medical testimony came from the nurse practitioner, Beverly Faro, who testified that she discussed the danger signs and risks associated with high blood sugar with Ms. K.. There was no proof that Ms. Faro told Ms. K. that her son was in any immediate danger because his blood sugar levels were fluctuating or were high at his appointments. Nor did Ms. Faro offer an opinion about the cause for the variations in Tyler's sugar levels or whether Ms. K. caused or could have avoided Tyler's periodic high sugar levels.
Moreover, the medical notes repeatedly state that during the period in question Tyler experienced none of the danger signs associated with a diabetic medical crisis. He did not experience increased urination, thirst, ketones in his urine or nausea, which Ms. Faro testified were the specific dangerous symptoms that Ms. K. was advised to watch for.
Even if medical neglect had been properly pled, the proof was insufficient. In order for DHS to prove medical neglect there must be "a finding that the failure to obtain medical assistance results in impairment of the child's condition or the imminent danger thereof" (Matter of Faridah W., 180 AD2d 451, 452 [1st Dept 1992] leave denied 80 NY2d 751). Since there was no proof regarding the cause of Tyler's elevated blood sugar levels at the September and November 2006 clinic appointments or that the elevated levels put him at risk of imminent danger of impairment of his physical health, medical neglect was not proven. Furthermore, it was uncontroverted that Tyler did not suffer any significant symptoms as a result of the fluctuations in his blood sugar levels and that although the nurse discussed risks and danger signs with Ms. K., she did not tell Ms. K. that there was any immediate danger. Nor was there any testimony that would allow the court to conclude that the two missed clinic appointments between September and November or the gap in medical visits between April and September created an imminent danger to Tyler's health.
[*5]
Thus, the proof was insufficient to demonstrate that Ms. K. failed to provide basic necessities or medical care for her son. The cause of action is, therefore, dismissed.
The second cause of action alleges that Ms. K. failed to provide adequate supervision and guardianship for Tyler and thereby inflicted or allowed to be inflicted harm or a substantial risk of harm (see Family Court Act §1012[f][i][B]). This section generally relates to circumstances where the parent has left children alone or unattended (see Matter of Ishmael D., 202 AD2d 1030 [4th Dept 1994]), relied on an inappropriate caretaker (see Matter of Joseph DD, 214 AD2d 794 [3rd Dept 1995]), allowed potentially abusive individuals to be around the children (see Matter of Elizabeth G, 255 AD2d 1010 [4th Dept 1998]) or where a parent has been unable to exercise control over her children (see Matter of Kenneth V., 307 AD2d 767 [4th Dept 2003]).
In order to establish neglect based on a lack of supervision and guardianship, DHS must prove that the child has been harmed or is threatened with imminent danger of harm as the result of the failure of the parent to properly supervise her child (see Matter of Evelyn X, 290 AD2d 817, 819 [3rd Dept 2002] citations omitted). The danger must be "near or impending, not merely possible"( Nicholson v. Scoppetta, 3 NY3d 357, 369 [2004]). There must also be a connection between the objectionable parental behavior or omission and the imminent danger of impairment (see Nicolson v. Scoppetta, 3 NY2d at 369; Family Court Act §1012[f][i]). Thus, not all objectionable parental behavior falls within the legal definition of neglect (see eg Matter of William EE, 157 AD2d 974 [3rd Dept 1990]); Matter of Susan B., 102 AD2d 938 [3rd Dept 1984]).
The petitioner failed to prove that the respondent's acts or omissions created an imminent danger to her son. An inference that there was a possible risk is insufficient. There was no proof that a failure by the respondent to supervise her son's insulin regime was responsible for the fluctuations in his sugar levels. Ms. K. sought the assistance of the school nurse and arranged for a caregiver who had Type II diabetes to watch Tyler while she worked. Additionally, there was not any proof that Tyler's diabetes would have been in any better control if he had kept the two missed appointments in October or if his mother had consistently provided a written log of his blood sugar levels.
Accordingly, the petition is dismissed.
is shall constitute the Order and Decision of the Court.
Signed at Rochester, New York on the 30th day of May, 2007.
________________________________JOAN S. KOHOUT
Family Court Judge
NOTICE
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL MUST BE TAKEN WITHIN THIRTY DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, THIRTY-FIVE DAYS FROM THE MAILING OF THE ORDER TO THE APPELLANT BY THE CLERK OF THE COURT, OR THIRTY DAYS AFTER [*6]SERVICE BY A PARTY OR LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.
THE MONROE COUNTY DEPARTMENT OF HUMAN SERVICES MAY BE REQUIRED BY LAW TO FILE A PETITION TO TERMINATE YOUR PARENTAL RIGHTS IF AT ANY TIME YOUR CHILDREN REMAIN IN FOSTER CARE FOR FIFTEEN (15) OUT OF THE PREVIOUS TWENTY-TWO (22) MONTHS.

Footnotes

Footnote 1:The medical records contained in Exhibit 1 were received by stipulation of the parties. Ms. Faro identified them as Tyler's records, but testified that they did not include any records concerning telephone calls.

Footnote 2:The medical note of September 19, 2006 states that the family had moved several times and was currently living with a friend due to problems with RG&E. "Mom unemployed now, searching for work on B or C shift."