■ In the Matter of Shaun B. and Another, Children Alleged to be Abused and Neglected. Taishawn B., Appellant; Commissioner of the New York City Administration for Children's Services, Respondent. [865 NYS2d 52]—

Order, Family Court, New York County (Jody Adams, J.), entered on or about September 15, 2006, insofar as it brings up for review the fact-finding determination that respondent mother had abused and neglected another child, not her own and not the subject of these proceedings, and thereby derivatively neglected the subject children, unanimously reversed, on the law and the facts, without costs, the findings of abuse and neglect vacated, and the petition dismissed.

The court erred in finding respondent legally responsible for the care of her boyfriend's child, Kyla (see Family Ct Act § 1012 [a]), who had made only sporadic visits to the apartment shared by respondent and her boyfriend. The child was never left in respondent's sole care and was at all times in the care of her father, including when the abuse took place, at which time respondent was sleeping (see Matter of R./C. Children, 303 AD2d 172 [2003]; Matter of Faith GG., 179 AD2d 901 [1992], lv denied 80 NY2d 752 [1992]).

Moreover, there was no evidence adduced at the fact-finding hearing from which it reasonably could be concluded that respondent had any reason whatsoever to apprehend that her

boyfriend might injure Kyla, let alone that he might injure her by shaking her (*see Matter of P. Children*, 272 AD2d 211, 211-212 [2000], *lv denied* 95 NY2d 770 [2000] [evidence insufficient to support a finding of abuse or neglect against father, where mother lost her temper and struck her son, because "(t)here was no showing that (father) had prior reason to know that the child was in danger"]). In addition, there was no evidence adduced at the fact-finding hearing that respondent had any involvement in or knowledge of either the tibia fracture sustained by Kyla or the prior shaking incident, which according to the undisputed evidence did not occur during any period of time in which Kyla was in respondent's apartment.

Respondent's conduct was at all times reasonable; she did not in any way contribute to the abuse of her boyfriend's child (*see Matter of Miranda O.*, 294 AD2d 940 [2002]; *Matter of Evelyn X.*, 290 AD2d 817, 820 [2002], *appeal dismissed* 98 NY2d 666 [2002]; *Matter of Robert YY.*, 199 AD2d 690, 692 [1993]). These determinations require reversal of the derivative findings of abuse and neglect as to the subject children (*Matter of Anjanne J.*, 44 AD3d 407 [2007]). Given our conclusion that the fact-finding determination must be reversed and the petition dismissed, the appeal from the placement order has been rendered academic. Concur—Lippman, P.J., Tom and Freedman, JJ.

Williams and McGuire, JJ., concur in a separate memorandum by McGuire, J., as follows: I agree in every respect with the memorandum reversing the fact-finding determinations that respondent mother had abused and neglected Kyla, the infant daughter of her boyfriend, and had derivatively neglected the subject children. I write separately, however, to emphasize certain of the stark deficiencies in the evidence and to make a larger albeit obvious point about this troubling case.

First, there was not a shred of evidence adduced at the fact-finding hearing from which a rational trier of fact could come to the conclusion that is essential to any finding of abuse with respect to Kyla: that respondent had any rational reason to apprehend that her boyfriend might injure Kyla, let alone that he might, intentionally, recklessly or negligently, injure her by shaking her. Nor was there evidence from which a rational trier of fact could conclude that on the night in question respondent had any knowledge or reason to know that her boyfriend had, as he ultimately admitted, shaken Kyla during the second night of the two successive days and nights in which Kyla was in respondent's apartment with her boyfriend. To the extent Family Court may have relied on evidence that Kyla had sustained a

fractured tibia, the evidence was uncontradicted that the injury occurred some two or more weeks before the two days and nights in which Kyla was in respondent's apartment with the boyfriend.

Family Court also appears to have based its finding against respondent that Kyla was a neglected child on, among other things, respondent's admissions that she smoked marihuana and was not enrolled or regularly participating in a drug treatment program. This, too, was manifestly erroneous. In the first place, there was no evidence at all at the fact-finding hearing that respondent regularly smoked marihuana. Rather, apart from a single positive test result for marihuana—a test that was taken *after* the subject children had been removed from respondent's home—the only evidence on this subject was testimony from a detective that respondent "had admitted that she had smoked marihuana." No testimony from the detective or anyone else at the fact-finding hearing indicated when or how often respondent smoked marihuana, let alone that she regularly smoked marihuana. Second, there was no evidence at all at the fact-finding hearing of "a link or causal connection" between respondent's use of marihuana "and the circumstances that allegedly produce[d] the child's impairment or imminent danger of impairment" (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]; *see also Matter of Anastasia G.*, 52 AD3d 830, 832 [2008] [holding that evidence was insufficient to support a finding of neglect where caseworker testified that father admitted that he used drugs, but "no evidence was elicited as to . . . the duration, frequency, or repetitiveness of his drug use, or whether he was ever under the influence of drugs while in the presence of the subject child," and there was no evidence that the subject child's "physical, mental, or emotional condition had been impaired or was in imminent danger of becoming impaired"]).

In my view, moreover, no rational trier of fact could conclude from the evidence at the hearing that respondent was legally responsible for the care of Kyla. In this regard, it bears emphasizing that the undisputed evidence at the hearing was that Kyla, who was born on January 5, 2003, was not often in respondent's home during the period of little more than two months before she was shaken, that respondent had never been left alone with Kyla, and that the last time Kyla had been in the apartment before the night in question was on February 14, about four weeks before, and even then only for a few hours.

In my view, the findings of abuse and neglect reflect a gross miscarriage of justice. Whether it was a gross miscarriage of justice is not a matter that needs to be decided to resolve this

appeal. It nonetheless is relevant to our disposition of this appeal because of our supervisory authority over the trial courts. Our Family Courts have extraordinarily difficult jobs in handling large case loads of challenging cases under the additional burden of knowing the profound importance both of the responsibilities entrusted to them and the consequences of the decisions they must make for the parents and children involved. That already great burden is all the more weighty in harrowing cases like this one in which an infant suffers severe injuries as a result of a parent's actions, here the father's admitted conduct of having shaken his infant daughter. To the end of seeking to avoid another gross miscarriage of justice like this one, I would not resolve this appeal without underscoring the following: the fundamental and critically important requirement that findings of abuse and neglect must be based on reasonable conclusions from the evidence adduced at a fact-finding hearing, not on the basis of conjecture and speculation that fills evidentiary gaps, applies in all cases.